592 P.2d 759

Jose DeELENA, as Personal Representative of the Estate of Antonia Mora DeElena, Deceased, for and on behalf of Jose DeElena and Pedro DeElena, the surviving children of Antonia Mora DeElena, Deceased, Appellant,

v.

SOUTHERN PACIFIC COMPANY, a Delaware Corporation, Southern Pacific Transportation Company, a Foreign Corporation, and Albert V. Sloper, Appellees.

No. 13600.

Supreme Court of Arizona,
In Banc.

Feb. 16, 1979.

Rehearing Denied March 27, 1979.

Thur, Preston & Hungerford by Calvin C. Thur, Scottsdale, Carl Waag, Tucson, for appellant.

Evans, Kitchel & Jenckes by F. Pendleton Gaines, III, David L. Beaugureau, Phoenix, for appellees.

STRUCKMEYER, Vice Chief Justice.

This is an appeal by Jose DeElena from a jury verdict in favor of appellees and an order denying his motion for a new trial. Jurisdiction was acquired pursuant to Rule 19(e), Arizona Rules of Civil Appellate Procedure, 17A A.R.S.

At about 4:30 p. m. on December 18, 1972, appellant's mother, Antonia Mora DeElena, age 51, was killed when the adult tricycle she was riding was struck by the engine of a southbound Southern Pacific Transportation Company freight train at the intersection of the railroad tracks and Broadway Road in Mesa, Arizona. Broadway Road is a four-lane, east-west paved street. The single track of the railroad roughly parallels Broadway in the area of the Mesa depot, some 1600 feet west of the crossing, then crosses MacDonald Road, a north-south street, and curves to the south approximately 1000 feet from the crossing. Thereafter, the track crosses Broadway Road in a general north-south direction. West of the crossing were double pavement markers ("RXR") and a standard circular, reflectorized warning sign at the south edge of Broadway Road. At the crossing, in the southwest quadrant approximately six feet from the curb line, there was a reflectorized crossbuck mounted on a pole, containing a bell and two round, flashing 25-watt red lights.

The train consisted of an engine, a caboose and eight cars. The crew consisted of an engineer, appellee Albert V. Sloper, a fireman, Sanford Burchett, two brakemen and a conductor. Sloper sat on the left side and Burchett sat on the right side of the engine since it was running in reverse. The other members of the crew were in the caboose which was hooked up directly behind the engine. One of the brakemen, James R. Grundy, sat in a bay window on the right side of the caboose.

As the engine entered the crossing, Burchett and Grundy saw Mrs. DeElena appear from behind the two lanes of eastbound traffic stopped at the crossing. She was traveling at a rate of speed estimated at three miles per hour. Burchett testified that he waited "a moment or two" to see if she was going to stop and when it appeared she would just keep going, he yelled at Sloper to apply the emergency brakes. Sloper did so immediately; however, Mrs. DeElena was struck by the engine and killed. The speed of the train was estimated at 15 to 20 miles per hour just prior to the application of the emergency brakes. The speed limit was 25 miles per hour. The flashing lights and bell on the crossbuck warning device were operating, and the whistle on the engine had been blown intermittently from the time the train left the Mesa depot. The double headlights on the lead end of the engine were operating on high beam.

The case was submitted to the jury on theories of negligence of defendants Sloper and Southern Pacific Transportation Company and contributory negligence of Mrs. DeElena. The jury returned general verdicts in favor of the defendants.

■ Because of the appellee's repeated insistence, both here and in the court below, that its sole duty is to warn travelers on the highway, it is appropriate to reiterate the statement this Court made in 1956 in *Southern Pacific Railroad Co. v. Mitchell*, 80 Ariz. 50, 292 P.2d 827:

> "It is axiomatic that a railroad company owes to travelers on the highway the affirmative duty of due care in the maintenance and safeguarding of its crossings and in the operation of its trains thereon. What constitutes such due care is measured in each instance by the facts of the particular situation.
>
> \* \* \* \* \* \*
>
> \* \* \* The common law standard of conduct applicable to a railroad company as to all persons in order to escape liability for injuries of another is to attain the status of a reasonably prudent person under the particular circumstances." 80 Ariz. at 58–59, 292 P.2d at 832–33.

Not only must the railroad give reasonable warning of the crossing and the approach of a train, *Atchison, Topeka & Santa Fe Ry. Co. v. Renfroe*, 77 Ariz. 28, 266 P.2d 745 (1954), but it must take precautions commensurate with the danger involved at the crossing to avoid injury to the traveling public. See *Peri v. Los Angeles Junction Ry.*, 22 Cal.2d 111, 137 P.2d 441 (1943). Where, in a congested area, a crossing is obstructed and is the site of an accident:

> " \* \* \* it may not be enough for the railroad to protect its crossing with the standard crossbuck, to operate its train within the speed limit, and to blow the whistle and ring the bell. The jury is still permitted to determine whether the railroad exercised reasonable care and caution under the circumstances and conditions existing at the time of the accident." *Seaboard Coast Line Railroad Co. v. Buchman*, 358 So.2d 836, 839–40 (Fla. App.1978).

■ Hence, whether a railroad is negligent in a particular manner, such as in failing to provide automatic crossing gates, is a question of fact for the jury.

"Ordinarily the issue of the negligence in crossing cases, whether the railroad was negligent in the design and maintenance of the crossing or in the operation of the train, is one of fact as in other negligence cases. (Id. [*Peri v. L.A. Junction Ry.*, 22 Cal.2d] at 120, 137 P.2d 441; *Wilkinson v. Southern Pacific Co.*, 224 Cal.App.2d 478, 487–488, 36 Cal.Rptr. 689.) Whether a defendant is negligent in failing to provide automatic gates is a question of fact for the jury. (See *Hogue v. Southern Pacific Co.*, 1 Cal.3d 253, 258, 81 Cal.Rptr. 765, 460 P.2d 965.) \* \* \*

\* \* \* A railroad company is not necessarily free from negligence, even though it may have literally complied with safety statutes or rules; the circumstances may require it to do more. (*Hogue v. Southern Pacific Co.*, supra, 1 Cal.3d at 258, 81 Cal.Rptr. 765, 460 P.2d 965.) If the peculiar characteristics of a crossing call for the installation of automatic protection—or the upgrading of existing automatic protection—the railroad may be guilty of negligence in failing to provide such protection. (*Hinkle v. Southern Pacific Co.*, 12 Cal.2d 691, 701–702, 87 P.2d 349.)" *Romo v. Southern Pacific Transportation Co.*, 71 Cal.App.3d 909, 916, 139 Cal.Rptr. 787, 791 (1977).

■ Appellant argues that wanton misconduct is a tort wholly separate from negligence. But it is settled that wanton misconduct is aggravated negligence. We said in *Bryan v. Southern Pacific Co.*, 79 Ariz. 253, 256, 286 P.2d 761, 762 (1955), that wanton negligence "involves the creation of an unreasonable risk of bodily harm to another (simple negligence) together with a high degree of probability that substantial harm will result (wantonness)." See also *Southern Pacific Transportation Co. v. Lueck*, 111 Ariz. 560, 535 P.2d 599 (1975), *cert. denied*, 425 U.S. 913, 96 S.Ct. 1510, 47 L.Ed.2d 763 (1976); *Nicholas v. Baker*, 101 Ariz. 151, 416 P.2d 584 (1966). The California courts analyze wanton negligence in this manner. A negligent act will be considered as wanton misconduct if these three elements exist: " '(1) actual or constructive knowledge of the peril to be apprehended, (2) actual or

constructive knowledge that injury is a probable, as opposed to a possible, result of the danger, and (3) conscious failure to act to avoid the peril.'" *Bains v. Western Pacific Railroad Co.*, 56 Cal.App.3d 902, 905, 128 Cal.Rptr. 778, 779 (1976), *quoting Morgan v. Southern Pacific Transportation Co.*, 37 Cal.App.3d 1006, 1012, 112 Cal.Rptr. 695, 698 (1974).

The rules by which liability for wanton misconduct is determined are the same as those by which liability for simple negligence is decided. Restatement of Torts, Second § 501. However, contributory negligence will not defeat a plaintiff's claim where wanton negligence is established. *Southern Pacific Transportation Co. v. Lueck*, supra.

■ Appellant claims that the trial court erred by excluding evidence which tended to prove the Southern Pacific Transportation Company was guilty of wanton and wilful misconduct and points to several categories of evidence which he believes were wrongfully excluded. It is urged that the principal reason the trial court refused to admit evidence of the railroad's alleged wanton misconduct was because the court thought he had failed to "prove" actionable negligence.[1] The record, however, does not support appellant in this contention.

Appellant sought to introduce studies and reports prepared by the Southern Pacific Company,[2] the Arizona Highway Department,[3] the Arizona Diagnostic team, and the City of Mesa,[4] as proof of wanton misconduct, arguing that the defendant company knew that gates or protective devices other than those being used at the time of the accident were needed to protect the traveling public. The trial court excluded this evidence, finding that without the foundation that pedestrians, bicyclists, or other non-motorists were considered in the reports, the evidence was irrelevant.

The trial court did not err in excluding the evidence. The studies were based on train-motor vehicle collisions and concerned the adequacy of warning given to the occupants of automobiles and trucks. Mrs. DeElena was not in the position of a motorist. She was in an open rather than a closed vehicle. Consequently her vision was unobscured and warning signals both audible and visual were more likely to be seen and heard. Mrs. DeElena's speed in operation of her tricycle, estimated at three miles per hour, was much slower than the motor vehicles using Broadway, whose speed limit was 35 miles per hour. She had greater control and more time to react to the crossing signals and the approach of trains.

Appellant's proposed evidence does not establish that the railroad knew the Broad-

---

1. Appellant launched into his wanton misconduct claim at the start of the trial. But the court required appellant to first present evidence concerning the foundation facts supporting the action; that is, the time, place and other circumstances of the accident. This was not error. The order of proof directed by the trial judge was logical and did not prejudice appellant. It served to focus the jury's attention on the underlying facts of the accident. In a civil action the order of proof is largely within the discretion of the trial judge. *Podol v. Jacobs*, 65 Ariz. 50, 173 P.2d 758 (1946), and cases cited therein; M. Udall, Arizona Law of Evidence § 4 (1960 ed.).

2. Studies performed by Southern Pacific (the Kruttschnitt reports) and the California Public Utilities Commission show that automatic crossing gates substantially reduce the number of fatal accidents over any other type of protective device. See *Southern Pacific Transportation Co. v. Lueck*, supra.

3. A report on the Broadway crossing prepared by the Arizona Highway Department stated that "80% of the train related accidents involved eastbound traffic," that "[t]he sight visibility of the railroad tracks to the south [of the crossing] is inadequate for the train and vehicular speeds at this location," that "the power poles paralleling the south side of the roadway seriously restricts visibility of the existing flasher unit facing eastbound traffic," and that "[t]he poor visibility of the flashing lights, in particular for eastbound traffic, coupled with the low audio level of the warning bell, often fails to provide adequate forewarnment to the driving public."

4. The trial court refused to admit a City of Mesa traffic report because appellant could not establish if bicycles, pedestrians or motorcycles were included in the traffic count on which the results of the report were largely based.

way crossing was unusually dangerous for tricyclists, even if it be assumed that without gates or other types of warning devices there was an unreasonable risk of accidents between trains and motor vehicles. The studies and reports have no probative value on the issue of the railroad's alleged wanton negligence as to Mrs. DeElena.

Appellant argues from the City of Mesa traffic report of eleven train-related crossing accidents, four of which were actual train-motor vehicle accidents, that the crossing's danger and the Southern Pacific's knowledge of the danger was apparent. In *Slow Development Company v. Coulter*, 88 Ariz. 122, 353 P.2d 890 (1960), we said that the

"* * * general rule is well established that evidence of other similar accidents at or near the place suffered by persons other than the plaintiff, at different times, not too remote in point of time, is admissible. [Citations omitted.] Such evidence is admissible, *after a proper foundation has been laid*, as tending to prove the existence of a defective or dangerous condition, knowledge or notice of the dangerous condition or negligence in permitting that condition to continue." 88 Ariz. at 125, 353 P.2d at 892. (Emphasis added.)

It must be shown that prior accidents occurred under circumstances the same or similar to the present accident. *Slow Development Company v. Coulter*, supra; *Simmons v. Southern Pacific Transportation Co.*, 62 Cal.App.3d 341, 133 Cal.Rptr. 42 (1976). Appellant did not offer to prove that the four vehicle-train collisions occurred under circumstances significantly similar to those of Mrs. DeElena's fatal accident. The trial court properly excluded the evidence of prior accidents.

■ Appellant offered to prove that John Crosby, a retired roundhouse foreman, would testify that he received orders from appellee company to remove the oscillating lights from the rear end of engines he was servicing to save maintenance costs, although the engines were frequently run in reverse. The trial court excluded this evidence for the reason that appellant failed to disclose it in answer to interrogatories which had previously been propounded. By Rule 37(a)(3), Arizona Rules of Civil Procedure, 16 A.R.S., an incomplete answer to an interrogatory is treated as a failure to answer, and Rule 37(d) provides that the failure of a party to answer interrogatories subjects such litigant to those sanctions set forth in Rule 37(b)(2)(A)–(C). One of the sanctions is that the party at fault may be prohibited from introducing the designated matter into evidence. Rule 37(b)(2)(B). Plainly, this was a matter within the trial court's discretion.

■ Appellant argues that the court improperly refused to allow him to present evidence concerning "inadequate" brakes. He does not contend that the train which struck Mrs. DeElena had defective brakes; rather, he argues that Southern Pacific knows that electropneumatic brakes with which this train was not equipped would stop a train more effectively, and that failure to use electropneumatic brakes constitutes evidence of wanton disregard for human life.

In *Bains v. Western Pacific Railroad Co.*, supra, the court said:

"Plaintiffs also attempted to show that a better braking system could have been used by Western Pacific trains. No doubt most accidents could be avoided if better equipment, employees, and procedures were used by defendants. However, willful misconduct must be shown by establishing the dangerousness of the then existing situation, and there is nothing in the record to show that defendant's brakes were defective." 56 Cal.App.3d at 907, 128 Cal.Rptr. at 780.

The brakes used on the Southern Pacific train complied with the applicable federal standards and were in good working order on the day of the accident. Moreover, the issue of better brakes was wholly irrelevant since there is nothing in the record to show that by use of electropneumatic brakes the train could have been stopped before it struck Mrs. DeElena.

■ Appellant refers to certain facts which in general he asserts tended to show wanton negligence but were excluded by the trial court. Among these were what is referred to in the record as "corporate bad acts." Appellant offered to prove that there was a company policy which prohibited Southern Pacific employees from discussing accidents. However, in the present case the record shows that company employees fully discussed the accident with investigating police officers. Another item excluded was testimony that the company's policy was to destroy records which might be damaging to it. However, there was no offer to show that any particular record which was sought to be discovered was destroyed. Appellant offered to show that there was no whistle post between the railroad station and the Broadway crossing. But this was immaterial, since the testimony was that the train's whistle had been blown intermittently after it left the station at Mesa.

■ Appellant's principal thrust in this appeal is that the trial court committed reversible error when it refused to submit to the jury the issue of appellee's wanton negligence. In determining whether the jury should have been instructed on wanton negligence, we will assume the truth of the relevant, competent evidence justifying the giving of such an instruction. *Alires v. Southern Pacific Co.*, 93 Ariz. 97, 378 P.2d 913 (1963); *Bryan v. Southern Pacific Co.*, supra. It is not, however, necessary that wanton negligence be established conclusively. *Nichols v. Baker*, supra. Evidence of wantonness must be more than slight and it may not border on conjecture. *Butane Corporation v. Kirby*, 66 Ariz. 272, 187 P.2d 325 (1947). The acts of a defendant must be considered as a whole and, although one of the several acts standing alone might not exceed the bounds of ordinary negligence, if all are taken together, they may present an issue of wanton negligence for the jury's determination. *Southern Pacific Transportation Co. v. Lueck*, supra.

■ Appellant argues that "except for the fact that the speed in *Lueck* was illegal, the 'substantial evidence' to support the giving of the instructions on wilful misconduct included every point made in *Lueck*."

Our review of the record indicates otherwise. Appellant did not establish that the Southern Pacific's employees violated Arizona statutes by ignoring block signals or were proceeding at speeds in excess of posted speed limits, or that they violated company rules in failing to operate the oscillating light on the engine. Unlike the engineer in *Lueck*, here the brakes were applied immediately after the engineer was informed that it appeared that Mrs. DeElena was not going to stop. Unlike the multiple track crossing in *Lueck* where switching occurred, the Broadway crossing was traversed by a single track. We have already found that the Kruttschnitt studies are not relevant in this case.

The only point of similarity between the facts of this case and those commented on in *Lueck* is that the engine was being run in reverse. Appellant urges that this action was negligent because the engine's oscillating light was on the front of the engine, away from the direction of travel, and the length of the engine further obscured the train crew's view of the crossing. Contrary to *Lueck*, appellant failed to establish that either operation in reverse or non-use of the oscillating light was a violation of then existing company rules or policy. We do not think that the operation of an engine in reverse without more can be characterized as a grossly negligent act.

■ We therefore conclude that there was not sufficient evidence to submit to the jury the issue of the asserted wanton misconduct of appellee. Unless an issue finds support in the evidence, it is improper to instruct the jury on it. *Kauffman v. Schroeder*, 116 Ariz. 104, 568 P.2d 411 (1977); *Brierley v. Anaconda Co.*, 111 Ariz. 8, 522 P.2d 1085 (1974).

One further matter should be discussed. The appellant offered to prove that Frank Lathrop, the railroad's Public Projects Engineer, who was charged with the duty of

analyzing various crossings in the Southern Pacific System to determine whether they were adequately protected, would testify that there were twenty factors which were considered in making an evaluation.[5] The railroad objected to the introduction of this evidence and the trial court sustained the objection. Appellant now complains that this was error, arguing that this information would have been helpful to inform the jury of the aspects of a crossing which make it dangerous to the traveling public and therefore it would help the jury determine whether the railroad has met its duty to use due care.

Appellant also offered testimony from Lathrop that, based on the twenty factors, automatic crossing gates were needed at the Broadway crossing. A similar issue was discussed in *Seaboard Coast Line Railroad Company v. Buchman*, supra, where the court said:

> " 'We hold that the trial court erred in admitting the expert testimony about the abnormally dangerous condition of the crossing. The facts submitted to the witness for the basis of his opinion were as follows:
>
> 1. The type of highway.
> 2. The speed of automobiles approaching the crossing.
> 3. The approach to the crossing—namely, a straight level highway running due east and west.
> 4. The advance warning signs.

5. The number of vehicles that daily cross the crossing.
6. The number of trains that pass the crossing daily.
7. The speed of the trains.
8. The angle of the approaches—namely, right angles.
9. Obstruction to vision of motorist.
10. Obstruction to vision of train crew.
11. Previous accidents that had occurred recently under similar conditions.
12. Distraction elements to motorists.
13. Railroad crossing signals.
14. The kind of day.
15. The position of the sun.

Not a single one of the foregoing facts taken individually is beyond the comprehension of the average juror; nor can we find any reason to say that an average juror would not be competent to determine from the facts when considered together whether the crossing was abnormally dangerous * * * ' " 358 So.2d at 841–42 (quoting *St. Louis Southwestern Railway v. Jackson*, 242 Ark. 858, 416 S.W.2d 273, 280 (1967)).

There is contrary authority. See *Merchant's National Bank of Aurora v. Elgin, Joliet & Eastern Railway Co.*, 49 Ill.2d 118, 273 N.E.2d 809 (1971); *Southern Pacific Co. v. Watkins*, 83 Nev. 471, 435 P.2d 498 (1967).[6] But we are more persuaded by

---

5. The factors are:
 (1) the type of tracks;
 (2) the number of lanes of vehicular traffic;
 (3) the width of the crossing;
 (4) the angle of approach of intersecting streets;
 (5) the grade of approach;
 (6) the view conditions from the street as to the approaching trains;
 (7) view conditions from the street of the signals;
 (8) the existence of streets parallel to the tracks;
 (9) the distance from the parallel street to the closest track;
 (10) the accident record factor;
 (11) the maximum train speed in the area;
 (12) the posted vehicle speed at the crossing;
 (13) the daily vehicle count;
 (14) the average number of trains over the crossing per day;
 (15) the condition of the street near the crossing;
 (16) switching or siding operations in the vicinity of the crossing;
 (17) adjacent businesses or other noise producing entities;
 (18) schools within a quarter mile radius of the crossing;
 (19) severity of accidents at the crossing;
 (20) whether the crossing protection devices were clearly visible to the engineer of the train as he approached the crossing at such a distance that he could stop the train in the event the devices were not operating.

6. See also *Sigel v. Boston & Maine Railroad*, 107 N.H. 8, 216 A.2d 794 (1966); *Shutka v. Pennsylvania Railroad Co.*, 74 N.J.Super. 381,

Chief Justice Underwood's dissent in *Merchant's National Bank of Aurora v. Elgin, Joliet & Eastern Railway Company*, supra, wherein he said:

> "'The subject matter of inquiry here is not of such a character that only persons of skill and experience in it are capable of forming a correct judgment about it. There was no complicated machinery; no question of science or skill. If the expert witness did not know all the facts his opinion would be only a guess. If he did known [sic] them, they could be detailed to the jurors and they would be as competent to form an opinion as the witness. This evidence should not have been allowed to go to the jury.'" 49 Ill.2d at 129, 273 N.E.2d at 815 (quoting *Yarber v. Chicago and Alton Ry. Co.*, 235 Ill. 589, 594, 85 N.E. 928, 930 (1908)).

 Since Lathrop had not examined the Broadway crossing prior to the accident, we hold it was not error to exclude his conclusion that the crossing was dangerous and needed automatic crossing gates.[7]

 The exclusion of the testimony concerning the factors which Lathrop considered when deciding whether a crossing should be upgraded in order to adequately protect the traveling public raises a different problem. Manifestly, an explanation of the factors which Lathrop relied on might have been helpful to the jury in considering whether under the circumstances the Southern Pacific had been negligent.

However, we think the exclusion of his evidence was for several reasons at most technical error. First, nearly all the facts which Lathrop would have used to form an opinion as to the dangerous character of the crossing were laid before the jury. Such matters as the width of the crossing, number of lanes of vehicular traffic, the angle of approach, the existence of parallel streets, etc., had been established by other witnesses. Moreover, some of the factors which Lathrop used obviously had no application to the Broadway crossing, e. g., the daily motor vehicle count and the accident severity.

Appellant had also previously introduced the testimony of two expert witnesses, Paul S. Masser and Judson S. Matthias. Masser was an engineer with a doctorate in aerospace and mechanical engineering. Matthias was an associate professor of engineering at Arizona State University and an instructor in traffic engineering.

Matthias testified as to significant factors which should be considered at crossings: (1) visibility up and down the tracks from the highway; (2) the location of signals in relation to street curb lines, and objects such as signs and poles along the highway; (3) reduction of signal visibility by reason of dirt and dust on the light lens;

181 A.2d 400 (1962); *Koch v. Southern Pacific Co.*, 266 Or. 335, 513 P.2d 770 (1973).

7. Our decision in *Alires v. Southern Pacific Co.*, 93 Ariz. 97, 378 P.2d 913 (1963), is clearly distinguishable. In *Alires*, the fireman of a train involved in a fatal train-automobile collision testified at an inquest that the crossing was "a particularly bad crossing." We held that the testimony was improperly excluded at trial, saying:

> "This knowledge, that the personal defendants were aware of, not alone the individual facts the sum of which establish a 'bad crossing' (extra hazardous) but that the sum did create an unreasonable risk of harm to others, was provable like any other fact in the case. From the fact that the defendants recognized and knew of the extra hazardous nature of the crossing the jury could reasonably infer negligence on the part of the corporate defendant either in permitting the operation of its trains at a speed of 79 miles per hour or in failing to provide more adequate warning devices, or both. Knowledge of danger, coupled with the failure to act on that knowledge in a reasonable and prudent manner, is the essence of plaintiff's complaint." 93 Ariz. at 107, 378 P.2d at 919–20.

We noted, however, that where knowledge is not at issue,

> "[T]he principle to be applied is that where the facts can be intelligently described to the jurors and understood by them and they can form a reasonable opinion for themselves, the opinion of experts will be rejected. * * [I]f a litigant may call a witness under the guise of an expert to testify as to his opinion then fair play requires that the opposing litigant be allowed to rebut such opinion by calling other experts to testify in opposition. This results in trial by experts * * *." 93 Ariz. at 108, 378 P.2d at 920.

(4) vehicle speed; (5) train speed; (6) the correlation between train speeds, vehicle speeds and sight distance. Masser explained to the jury how the warning devices at the Broadway crossing were activated by approaching trains and how the crossing signal was activated by switching activity near the Mesa depot.

From their testimony it is clear the jury was fully informed of the nature of the crossing. For this reason, we think Lathrop's evidence was repetitious and cumulative and would not, in any event, have changed the verdict of the jury. The exclusion of cumulative evidence does not necessarily require reversal by an appellate court. *Daru v. Martin*, 89 Ariz. 373, 384, 363 P.2d 61, 68 (1961).

Appellant presents other questions for review, but he fails to argue these issues. Rule 13(a)(6), Arizona Rules of Civil Appellate Procedure, 17A A.R.S. provides in part that appellants' briefs "shall concisely and clearly set forth * * * [a]n argument, which shall contain the contentions of the appellant with respect to the issues presented, and the reasons therefor, with citations to the authorities, statutes and parts of the record relied on." Since appellant does not consider these issues as worthy of argument, we consider them as abandoned. *In re Lamfrom's Estate*, 90 Ariz. 363, 368 P.2d 318 (1962); *Goldwaters, Inc. v. Medar*, 82 Ariz. 344, 313 P.2d 410 (1957); *EFC Development Corp. v. F. F. Baugh Plumbing & Heating, Inc.*, 24 Ariz.App. 566, 540 P.2d 185 (1975).

Judgment affirmed.

CAMERON, C. J., and HAYS, HOLOHAN and GORDON, JJ., concur.