844 P.2d 623

Raul NEWMAN and Donna Newman, his wife; Ronald Newman, by and through his parents and next friends, Raul and Donna Newman; and Kimberly Newman, by and through her parents and next friends, Raul and Donna Newman, Plaintiffs–Appellants,

v.

SUN VALLEY CRUSHING COMPANY; Doris C. Walker, individually and as personal representative of the Estate of William A. Walker, deceased; John Weik, Jr., and Glendine Weik, husband and wife, Defendants–Appellees.

No. 1 CA–CV 90–0649.

Court of Appeals of Arizona,
Division 1, Department D.

July 2, 1992.
Review Granted Feb. 2, 1993.

See also` 160 Ariz. 474, 774 P.2d 213.

Larry G. Haddy, Ltd. by Larry G. Haddy, Phoenix, for plaintiffs-appellants.

Jennings, Kepner & Haug by Jack R. Cunningham and Randy L. Sassaman, Phoenix, for defendants-appellees.

## OPINION

CLABORNE, Presiding Judge.

Raul and Ronald Newman (Newmans) brought a personal injury action for injuries which they sustained in 1985 while riding their all-terrain vehicles (sometimes called "ATCs") on property owned by the defendants. The trial court granted summary judgment in favor of the defendants and this appeal followed. We reverse and remand.

We will review, as we must, the facts in the light most favorable to the party against whom judgment was entered. *Wagenseller v. Scottsdale Memorial Hospital*, 147 Ariz. 370, 388, 710 P.2d 1025, 1043 (1985).

The property in question is in the Agua Fria riverbed near 115th Avenue and Beardsley Road in the Phoenix area, and it had been used since the early 1970s as a sand and gravel mining operation. Members of the public frequently rode their ATCs in the riverbed. Near the gravel pit, and within the riverbed, is a natural bowl which riders used. They would ride their ATCs on well-defined trails to the crest of the bowl and down again. Officer Rock of the Peoria Police Department had seen ATCs in the general area of the riverbed for the five years he had been with the police department. He said in his deposition that riders were in the vicinity of the gravel pit "all the time."

Although the defendants knew ATCs were used in the general area, they indicated they did not know that ATCs were used in the bowl near the pit nor did they know of the existence of numerous bicycle and ATC tracks in the bowl area. The defendants considered the riders trespassers, and on occasion they stopped them if they saw them near the stockpile or pit area, told them that they were on private property and asked them to leave. However, no effort was made to keep the ATCs from using the riverbed area for recreational purposes.

Before 1985, the size of the gravel pit and its proximity to the bowl was increased by the excavation of the gravel pit. By September 1985, a month before this incident, there was about one hundred feet of level ground between the east edge of the bowl and the west edge of the gravel pit. Three weeks before the incident the level area between the pit and the bowl had shrunk to about twenty to twenty-five feet of level ground. By October 19, 1985, the pit had been excavated close to the bowl and had cut off part of the trail found on the level ground area. Also, the distance between the east edge of the bowl and the west edge of the gravel pit was about fourteen feet.

It is clear from the record that although there were some warning signs (the nature and location of them is not in the record), there were no signs indicating that the property was privately owned, that trespassers were not allowed, nor any indication that a gravel pit existed nearby. Also, no fences nor berms surrounding the pit adjacent to the bowl area existed. Although the Newmans had previously ridden their ATCs in the bowl area, they did not know the property was privately owned. However, before the incident they had ridden around the perimeter of the bowl and had seen the gravel pit. During this period the pit was at least one hundred yards from the bowl. It must also be said that although the gravel pit could be seen from the level ground at the top of the bowl, the pit could not be seen when one was in the bowl area itself. On the day the incident occurred, the Newmans did not investigate where the edge of the gravel pit was located in relation to the bowl.

On October 19, 1985, Brent Vaughn, who also had previously used his ATC in the bowl area, rode up the crest of the bowl to the level ground, fell into the gravel pit and

was fatally injured. The next day, the Newmans rode their ATCs up the crest of the bowl and also fell into the gravel pit. Both were injured. There had not been previous accidents on the property involving ATCs and the defendants did not know of the Vaughn accident at the time the Newmans were injured.

The Newmans filed a complaint against the defendants alleging negligence for creating a dangerous and unsafe condition on their property and failing to warn the Newmans of its existence. They alleged that the defendants' conduct constituted gross and wanton neglect. The defendants moved for summary judgment claiming that the Arizona Recreational Use Statute applied to them. The court granted the motion and the Newmans appealed.

■ Summary judgment is appropriate where "the claim or defense ha[s] so little probative value given the quantum of evidence required, that reasonable people could not agree with the conclusion advanced by the proponent of the claim or defense." *Orme School v. Reeves*, 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990). Summary judgment is inappropriate, however, where the trial judge would be "required to pass on the credibility of witnesses with differing versions of material facts,

... required to weigh the quality of documentary or other evidence, and ... required to choose among competing or conflicting inferences." *Id.* at 311, 802 P.2d at 1010.

The summary judgment argument centered around our recreational use statute, Ariz.Rev.Stat.Ann. ("A.R.S."), section 33–1551,[1] and § 337 of the Restatement (Second) of Torts.[2] The defendants argued that the recreational use statute barred liability as a matter of law. The Newmans, on the other hand, argued that the statute did not apply, and that the conduct of the defendants was governed by the Restatement. The Newmans further said that even if the statute did apply, genuine issues of material facts existed sufficient to prohibit the granting of summary judgment. The trial court, in ruling on the motion, said:

The Court finds that whether Plaintiffs had implied permission to use the land or were trespassers, summary judgment should be awarded to Defendant Sun Valley Crushing. There is no evidence that Defendant knew of the existence of trespassers riding ATCs in the proximity of the pit where the accident occurred. Moreover, the substantial size and nature of the pit in an ongoing mining operation

---

1. A.R.S. section 33–1551 provides:

A. An owner, lessee or occupant of premises does not:
  1. Owe any duty to a recreational user to keep the premises safe for such use.
  2. Extend any assurance to a recreational user through the act of giving permission to enter the premises that the premises are safe for such entry or use.
  3. Incur liability for any injury to persons or property caused by any act of a recreational user.
B. As used in this section:
  1. *"Premises" means agricultural, range, mining or forest lands, and any other similar lands which by agreement are made available to a recreational user,* and any building or structure on such lands.
  2. *"Recreational user" means a person to whom permission has been granted or implied* without the payment of an admission fee or other consideration to enter upon premises to hunt, fish, trap, camp, hike, ride, swim or engage in similar recreational pursuits. The purchase of a state hunting, trapping or fishing license is not the payment of an admission

fee or other consideration as provided in this section.
C. *This section does not limit the liability* which otherwise exists for maintaining an attractive nuisance, or *for wilful or malicious failure to guard or warn against a dangerous condition, use or activity.*
(Emphasis added.)

2. Section 337 of the Restatement (Second) of Torts (1965) provides:
*Artificial Conditions Highly Dangerous to Known Trespassers*
A possessor of land who maintains on the land an artificial condition which involves a risk of death or serious bodily harm to persons coming in contact with it, is subject to liability for bodily harm caused to trespassers by his failure to exercise reasonable care to warn them of the condition if
  (a) the possessor knows or has reason to know of their presence in dangerous proximity to the condition, and
  (b) the condition is of such a nature that he has reason to believe that the trespasser will not discover it or realize the risk involved.

was not undiscoverable or a hazard concealed from the Plaintiff.

■ On appeal, the Newmans first contend that the trial court granted summary judgment based on a finding of a lack of duty owed to the Newmans by the defendants and that this conclusion is erroneous as a matter of law under *Markowitz v. Arizona Parks Board*, 146 Ariz. 352, 706 P.2d 364 (1985). Defendants argue that the court's ruling was not based on a finding of a lack of duty owed to the Newmans. Rather, they allege it was based upon factual findings that there was insufficient evidence of the necessary elements to find liability under either A.R.S. section 33–1551(C) or § 337 of the Restatement (Second) of Torts.

A reading of the minute entry suggests that the trial court regarded the duty owed a recreational user and one owed a trespasser as being at least similar.[3] The minute entry order also indicates that since the defendants lacked knowledge of the ATC riders riding close to the gravel pit and because of the obvious nature of the pit itself, liability did not exist because there was no breach of duty as a matter of law. *See Rogers v. Retrum*, 170 Ariz. 399, 825 P.2d 20 (App.1991) (failure of school district to take precautionary measures to prevent injury to student question of breach, not duty nor causation).

We examine these findings in the light of the statute.

## Applicability of A.R.S. section 33–1551.

In *Walker v. City of Scottsdale*, 163 Ariz. 206, 786 P.2d 1057 (App.1989), the court discussed the legislative history of the statute and its purpose. The idea behind the statute was to encourage the use of private land for recreational use. The way to help encourage this purpose was to limit the liability for injury to those who used the private property. *Id.* at 208, 786 P.2d at 1059. *See also Bledsoe v. Superior Court*, 170 Ariz. 256, 823 P.2d 1264 (1991).

The position of the Newmans in the trial court and here is that the statute does not apply as a matter of law because the defendants did not make their land available for public use; the defendants' property does not come within the definition of "premises" as defined by the statute; and even if the property falls within the definition of "premises," the statute does not permit the landowner to *create* a dangerous condition on his land, and that such action removes the defendants from the ambit of the statute's protection.[4]

In response the defendants claim that the statute does apply because the Newmans admitted in their response to a request for admissions that they had implied permission to be on the property, and are now judicially estopped from claiming trespasser status.

> The substance of the rule stated in this Section is often applied by calling the actor's failure to exercise reasonable care to prevent his activities from causing harm to a known trespasser "wanton" or "wilful" misconduct. The words "wanton" or "wilful" misconduct are also often used to describe conduct which is called in the Restatement of this Subject "conduct in reckless disregard of the safety of others." Because of the ambiguous use of these words, they are not used in the Restatement of this Subject. *Id.* at p. 194.

**3.** *See Charpentier v. Von Geldern*, 191 Cal. App.3d 101, 236 Cal.Rptr. 233 (1987) (holding that under California's recreational use statute, a landowner's duty to a recreational user is no greater than that owed trespassers under common law). Under A.R.S. section 33–1551(C), the landowner's duty is to neither maintain an attractive nuisance nor wilfully or maliciously fail to guard or warn against a dangerous condition, use or activity. The common law duty to a trespasser is to neither wilfully nor intentionally inflict injury. *Spur Feeding Co. v. Fernandez*, 106 Ariz. 143, 472 P.2d 12 (1970). However, specific duties owed by a landowner to a trespasser as set forth in sections 333–339 of the Restatement (Second) of Torts (1965), do not define liability in terms of wilful or malicious misconduct. Comment (e) to section 336 of the Restatement covering "Activities Dangerous to Known Trespassers" states:

**4.** We believe defendants' land falls within the definition of "premises" under A.R.S. section 33–1551(B)(1) as the statute specifically includes mining lands. In addition to the enumerated types of land, the statute also includes "similar lands which by agreement are made available to a recreational user." *Walker v. City of Scottsdale*, 163 Ariz. at 209, 786 P.2d at 1060.

They further contend that an express agreement is not needed and that permission can be implied. A.R.S. § 33–1551(B)(2). The defendants rely on *Rodriguez v. Schlittenhart*, 161 Ariz. 609, 780 P.2d 442 (1989), to support their claim that permission to use the premises can be implied. Yet, in *Rodriguez* a question of fact existed in determining whether the plaintiff had implied permission or was a trespasser. Because there was no ruling on the plaintiffs' request to change the answer in the defendants' requests for admissions, we do not reach the applicability of § 337 of the Restatement (Second) of Torts nor whether the plaintiffs were trespassers. We assume plaintiffs are recreational users.

*Liability Under A.R.S. section 33–1551.*

■ The real question is whether summary judgment should have been granted in the face of A.R.S. section 33–1551(C) even when we assume that the Newmans were recreational users. A.R.S. section 33–1551(C) creates an exception to non-liability "for wilful or malicious failure to guard or warn against a dangerous condition, use or activity." The argument by the defendants is that the record does not reflect activity sufficient to meet that standard. In response, the Newmans claim that a genuine material fact issue exists concerning whether the defendants' actions in failing to warn or guard against the dangerous condition they created constitutes wilful or malicious conduct.

Because there has been some shift in the view of what "wilful" conduct is, we first discuss these views.

In *Southern Pacific Trans. Co. v. Lueck*, 111 Ariz. 560, 535 P.2d 599 (1975), Arizona defined the term "wilful" as follows.

> Wilful misconduct means intentional, wrongful conduct, done either with knowledge that serious injury to another probably will result or with a wanton and reckless disregard of the possible results and is essentially a question of fact.
>
> "The usual meaning assigned to 'wilful,' 'wanton' or 'reckless,' according to taste as to the word used, is that the actor has intentionally done an act of an unreasonable character in disregard of a risk known to him or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow."
>
> To determine wanton negligence, the acts of a defendant must be considered as a whole and although each of several acts standing alone might not exceed the bounds of ordinary negligence, yet taken together they may establish wanton negligence. Where the evidence discloses several acts of negligence, whether gross or wanton negligence is established as a matter for the jury.

*Id.* at 563, 535 P.2d at 602 (citations omitted). Prosser says that "wilful," "wanton" or "reckless" misconduct identifies "an aggravated form of negligence, differing in quality rather than degree from ordinary lack of care." Dan B. Dobbs, et al., *Prosser and Keeton on Torts* § 34 at p. 212 (5th ed. 1984). In *DeElena v. Southern Pacific Co.*, 121 Ariz. 563, 592 P.2d 759 (1979), our supreme court approved the definition of a synonymous term "wanton" used by the California courts as (1) actual or constructive knowledge of the peril to be apprehended, (2) actual or constructive knowledge that injury is a probable, as opposed to a possible, result of the danger, and (3) conscious failure to act to avoid the peril. *Id.*, 121 Ariz. at 566–67, 592 P.2d at 762–63. Then in *Linthicum v. Nationwide Ins. Co.*, 150 Ariz. 326, 723 P.2d 675 (1985), our supreme court examined in detail the definitions various courts have used to describe mental states such as wilful, wanton, reckless and malicious, for the purpose of determining what standard to apply when dealing with punitive damages. In the punitive damage context, an "evil mind" rules. *Id.* at 331, 723 P.2d at 680. The court said:

> In whatever way the requisite mental state is expressed, the conduct must also be aggravated and outrageous. It is conscious action of a reprehensible character. The key is the wrongdoer's intent to injure the plaintiff or his deliberate interference with the rights of others,

consciously disregarding the unjustifiably substantial risks of significant harm to them. While the necessary "evil mind" may be inferred, it is still this "evil mind" in addition to outwardly aggravated, outrageous, malicious, or fraudulent conduct which is required for punitive damages.

*Id.* (citations omitted).

The question, then, is whether the legislature, in enacting the recreational use statute, intended "wilful" to equate with the "evil mind" standard. We conclude it did not.

In *Miller v. United States*, 945 F.2d 1464, 1467 (9th Cir.1991), the Ninth Circuit Court of Appeals, applying Arizona law, determined that the definition of "wilful" in the recreational use statute should be the one articulated in *Lueck*, 111 Ariz. at 563, 535 P.2d at 602, rather than the "evil mind" standard found in *Linthicum*, 150 Ariz. at 331, 723 P.2d at 680, which it found was applicable to determine punitive damage awards. The court reasoned that the recreational use statute is in derogation of the common law and must be strictly construed and that there was no evidence the Arizona legislature intended to define the term differently than its common law meaning. We agree with this reasoning and apply the test of wilfulness as set forth in *Lueck*, 111 Ariz. at 563, 535 P.2d at 602.

▆▆▆ The question of whether conduct is wilful, wanton or malicious is almost always a jury question unless the evidence is "slight and inconclusive bordering on the realm of conjecture." *Smith v. Chapman*, 115 Ariz. 211, 214, 564 P.2d 900, 903 (1977). Similarly, whether a party's action in failing to guard against or warn against a dangerous condition, use or activity under the recreational use statute rises to the level of wilful or malicious conduct usually is a question for the trier of fact. *Miller*, 945 F.2d at 1468.

Under the current state of the record a reasonable juror could find that the defendants' conduct constituted wilful or malicious failure to warn or guard against a dangerous condition under A.R.S. section 33–1551. The defendants admitted they knew ATCs were in the general area of the riverbed, although they stated they did not know the vehicles were used in the bowl area next to the gravel pit. However, the riverbed had been used by ATCs for over five years and there were well-defined trails and ATC tracks in the bowl area. Officer Rock testified he had frequently seen ATCs in and around the gravel pit area. The question of defendants' knowledge of the presence of ATCs near the pit requires an assessment of credibility of the witnesses. The gravel pit was excavated at the specific direction of the defendants and grew closer to the bowl area over time. Admittedly, there were no warning signs, fences or berms in the bowl area to alert riders to a potential danger.

Considering wilful or malicious conduct, other jurisdictions have considered similar evidence and have held that these are questions of fact which preclude summary judgment.

In *Burnett v. City of Adrian*, 414 Mich. 448, 326 N.W.2d 810 (1982), the plaintiff drowned after walking off the edge of a submerged structure in a lake that the defendant had failed to level at the time of a flood. Under the equivalent Michigan statute, there was an exception to the landowners' non-liability for "gross negligence or wilful or wanton misconduct." There, because the defendant knew of the existence of this submerged structure, knew that swimmers used the area and failed to post signs, the court found that a question of fact existed concerning the wilfulness of the defendants.

In *Von Tagen v. United States*, 557 F.Supp. 256 (N.D.Cal.1983), the federal district court applying the California recreational use statute found a question of material fact of wilful or malicious failure to warn or guard against a dangerous condition where the government failed to place warning signs on a dangerous curve on federal recreational property. In *Simpson v. United States*, 652 F.2d 831 (9th Cir. 1981), the plaintiff was injured in a national forest when the ground gave way and he fell into a hot pool. Although the Forest

Service placed some warning signs nearby, the Ninth Circuit held:

> When wilfulness is an issue, summary judgment should be granted with caution since questions of intent or motive are present.
>
> In this case, the crucial facts regarding the type of warnings which were given and thus the extent [of] the United States to protect against known dangers was hotly disputed. Whether the efforts of the United States were so feeble as to rise to the level of wilfulness is a material issue of fact which should have prevented summary judgment and which now warrants reversal.

*Id.* at 834. *See also Miller v. United States,* 442 F.Supp. 555 (N.D.Ill.1976), *affirmed,* 597 F.2d 614 (7th Cir.1979), and *Lucchesi v. Kent County Road,* 109 Mich. App. 254, 312 N.W.2d 86 (1981).

We conclude that a reasonable juror could find that the defendants knew that ATCs were in the bowl area, knew of the risk of serious injury to riders, recklessly disregarded that risk by failing to warn or guard against the dangerous condition caused by the closeness of the pit to the bowl area, and therefore may have violated A.R.S. section 33–1551(C).

■ Whether a condition is obvious is normally a fact question which should not be resolved by summary judgment. *See Markowitz v. Arizona Parks Board,* 146 Ariz. at 359, 706 P.2d at 371. There was evidence that the bowl area may not have been readily discoverable. Also, any suggestion that the Newmans were contributorily negligent for failing to investigate land condition before riding their ATCs or by not following standard safety procedures requires a factual determination precluding summary judgment. *Id.*

The trial court erred in granting summary judgment. We reverse the judgment of the trial court and remand for further proceedings.

McGREGOR and TAYLOR, JJ., concur.