NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

TAMMY MUNGUIA, et al., *Plaintiffs/Appellants*,

*v.*

COURTNEY RENE CRAMER, *Defendant/Appellee*.

No. 1 CA-CV 18-0272
FILED 4-16-2019

Appeal from the Superior Court in Maricopa County
Nos. CV2012-016960; CV2016-092337
The Honorable Daniel G. Martin, Judge

**AFFIRMED**

COUNSEL

Ahwatukee Legal Office, P.C., Phoenix
By David L. Abney
*Counsel for Plaintiff/Appellant*

Hill, Hall & Deciancio, PLC, Phoenix
By Thomas C. Hall, Diane M. Lucas, Christopher Robbins
*Counsel for Defendant/Appellee*

---

**MEMORANDUM DECISION**

Judge James P. Beene delivered the decision of the Court, in which Presiding Judge David D. Weinzweig and Judge Kent E. Cattani joined.

---

**B E E N E**, Judge:

¶1        Tammy Munguia ("Munguia") appeals the superior court's judgment in favor of Courtney R. Logan, formerly known as Cramer ("Logan"), as well as the court's adverse rulings on her motion for judgment as a matter of law, motion for a new trial, and related evidentiary and procedural issues.  For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2        On November 4, 2010, a 2010 Nissan Versa driven by Logan rear-ended a 2005 Jeep Liberty, in which Munguia was a front seat passenger ("2010 accident").[1]  Describing the accident, Logan testified that, as the traffic was merging right into one lane due to construction, she looked left to check her blind spot, watching for approaching cars, while the Jeep Liberty in front of her started breaking.  She hit the brake, turning left to avoid a collision, yet bumped into the Jeep Liberty's back-mounted spare tire.  She was driving between 5.8 and 7.3 miles per hour at contact ("Delta-V"), a range agreed to by both accident reconstruction expert witnesses.  After the accident, Munguia exited the Jeep, walked to Logan, said she was "fine" and that "accidents happen," told a police officer she and the Jeep's driver were "okay," and refused an ambulance.  She did not visit an emergency room or urgent care upon leaving the accident scene, but instead drove the Jeep to pick up her children and go home.

¶3        At trial, Munguia testified she struck her shin during the 2010 accident, causing a bruise, and was "real sore [and] achy" later that day with increasing lower back pain the next day.  Expert witnesses agreed Munguia suffered a bruise, possibly a short-term muscle strain.  Munguia began chiropractic treatment a few days later.

---

[1]        The Jeep's driver, Francine Bejarano, was dismissed from the lawsuit in June 2016 pursuant to a joint stipulation.

¶4         On December 20, 2010, Munguia visited Dr. Fields, who examined her, recorded her weight, and took a magnetic resonance imaging ("MRI") of her lower back.  The MRI revealed several intervertebral disc protrusions in her lumbar spine, which led Dr. Fields to conclude the 2010 accident caused Munguia's herniated nucleus pulposus ("herniated discs"). On January 6, 2011, Dr. Fields operated on Munguia, giving her two epidural injections.

¶5         Munguia was involved in another, more serious car accident in May 2011.  She was driving when a vehicle hit her car's passenger side. Her vehicle was towed and the other vehicle's entire front was damaged. Munguia testified at trial that she recovered from the 2011 accident to her pre-accident condition.  In addition to the 2010 and 2011 accidents, Munguia had previously been involved in another car accident (in 2005), but had suffered only minor injuries, from which she had fully recovered.

¶6         In September 2011, Dr. Ehteshami, a board-certified orthopedic spine surgeon, performed a posterior spinal fusion operation of Munguia's lower back.  Prior to the operation, Munguia did not inform Dr. Ehteshami about the 2011 accident.  Munguia filed a medical malpractice lawsuit against Dr. Ehteshami in June 2016, which was dismissed in September 2017.  Dr. Ehteshami was, however, included in this lawsuit as a nonparty at fault for the jury to consider his alleged medical negligence "[i]n assessing percentages of fault."  See Cramer v. Starr, 240 Ariz. 4, 9, ¶ 18 (2016) (quoting Ariz. Rev. Stat. ("A.R.S.") § 12-2506(B)).

¶7         The court held an 11-day jury trial.  Munguia requested $32.5 million in damages.  Her damages expert testified the 2010 accident caused her $7.30 to $7.40 million in total life-time economic damages.  The jury rendered a defense verdict in favor of Logan.  Munguia filed a motion for judgment as a matter of law, or alternatively for a new trial, which was denied and followed by an entry of judgment against Munguia in the amount of $97,470.39.  Munguia timely appealed.  We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 12-120.21(A)(1) and -2101(A)(1).

**DISCUSSION**

¶8         Munguia argues the superior court erred by: 1) denying her motions for judgment as a matter of law and for a new trial because she presented uncontradicted evidence proving all four elements of negligence; 2) allowing Logan's biomechanical expert Dr. Peles to testify to specific causation of Munguia's injuries, instead of merely to general causation,

prejudicing Munguia; 3) failing to exclude evidence regarding the 2005 and 2011 car accidents, which was "highly prejudicial" to Munguia because no expert witness testified to any causative relation of these accidents to Munguia's injuries and because Logan failed to notify any related nonparty at fault; and 4) permitting the jury to consider the alleged fault of a nonparty spinal surgeon Dr. Ehteshami without Logan's full compliance with the notice process.

### I.  Substantial Evidence Supported the Jury's Defense Verdict.

**¶9**        Munguia argues that she presented uncontradicted evidence of negligence and negligence *per se* pursuant to A.R.S. §§ 28-701(A) and -730(A), and demonstrated injury, causation, and damages.  Munguia contends the jury's defense verdict was not supported by the evidence, was contrary to law, and the superior court, thus, erred by not granting her motions for judgment as a matter of law or for a new trial.

**¶10**        We will affirm a jury verdict if it is supported by substantial evidence, which we view in the light most favorable to sustaining the verdict. *Warrington v. Tempe Elementary Sch. Dist. No. 3*, 197 Ariz. 68, 69, ¶ 4 (App. 1999).  Substantial evidence is proof that permits reasonable persons to reach the jury's result. *In re Estate of Pouser*, 193 Ariz. 574, 579, ¶ 13 (1999).  We review the denial of a motion for new trial based on the verdict being against the weight of the evidence for an abuse of discretion, *Dawson v. Withycombe*, 216 Ariz. 84, 95, ¶ 25 (App. 2007), which occurs when "the record fails to provide substantial evidence to support the trial court's finding," *Flying Diamond Airpark, LLC v. Meienberg*, 215 Ariz. 44, 50, ¶ 27 (App. 2007) (citation omitted).  "The credibility of [any] witness' testimony and the weight it should be given are issues particularly within the province of the jury." *Estate of Reinen v. N. Ariz. Orthopedics, Ltd.*, 198 Ariz. 283, 287, ¶ 12 (2000) (citation omitted); *see also Logerquist v. McVey*, 196 Ariz. 470, 488, ¶ 52 (2000) ("Questions about the accuracy and reliability of a witness' factual basis, data, and methods go to the weight and credibility of the witness' testimony and are questions of fact.").

**¶11**        Here, the record included substantial evidence supporting the jury verdict.  Logan offered two expert witnesses, including a board-certified orthopedic spine surgeon with over 25 years of practical experience and an accident reconstructionist.  The spine surgeon, Dr. Maric, testified that "the only injury that I can confirm that occurred as a result of [the 2010] accident was a shin contusion, which is what was diagnosed, lower leg contusion . . . a bruise."  He further declared that, although the bruise was documented, there was "no treatment for it."  Dr. Maric found

"no objective evidence that [Munguia] injured any part of her spine as a result of this accident." Dr. Maric opined that a trauma caused by two herniated discs would have produced an immediate physiological response and that Munguia's lack of complaints of immediate pain suggested no disc herniation occurred during the 2010 accident. He further opined the protrusions on Munguia's MRI scan were not symptomatic as she "did not have specific radicular complaints . . . . Instead, she had these vague diffused complaints that really didn't fit any specific nerve root distribution." Dr. Maric determined that Munguia had no physical disorder from the accident and that no physiological treatment would help her.

¶12 The accident reconstructionist, Dr. Joseph Peles, had a Ph.D. in bioengineering with a specialty in injury biomechanics, and he specialized in spine injuries and rear-end collisions. *Lohmeier v. Hammer*, 214 Ariz. 57, 64-65, ¶ 29 (App. 2006). Dr. Peles opined the 2010 accident did not produce a force level sufficient to produce disc herniations because the potential for compression remained within a tolerance range incapable of producing disc herniation. Dr. Peles agreed that Munguia suffered a bruise as a result of the accident, although "it was just more of a reflex reaction" because the forward rebound of the lower body was very minor.[2]

¶13 Dr. Fields, Munguia's treating orthopedic spine surgeon, testified that the 2010 accident caused Munguia's herniated discs. Dr. Fields also testified, however, that in determining causation he must rely on the patient's subjective history, which can sway causation determination "in a different direction." Dr. Fields also confirmed that disc herniations can be caused by "a number of different things" and that he could not prove Munguia's herniations did not exist before the accident because an MRI scan does not indicate when the herniations started. Dr. Fields noted that Munguia was overweight and agreed that her weight could have led to a

---

[2] Munguia's expert witness for traffic accident reconstruction Michael Broughton did not testify regarding any of the alleged injuries, nor would he opine on any injury mechanisms, rebound motion, or any other biomechanical analysis, as it was outside the scope of his qualifications. Dr. Hinrichs, Munguia's expert witness on biomechanics of injuries, testified that the 2010 accident could have caused Munguia's herniated discs because the seat bar in Munguia's car seat would function like a weapon during a rear-end collision. However, Dr. Hinrichs provided no support for his opinion other than a study performed in the 1990s on an older type of car seat, which had contributed to a different kind of injury.

herniated disc without an acute injury. Dr. Peles criticized Dr. Fields's opinion because he never considered the severity of the accident and relied only on Munguia's statements.

**¶14**       Dr. Dennis Crandall, Munguia's expert witness and a board-certified academic orthopedic spine surgeon, testified that it was "hard to say" whether the minor disc bulge shown on the December 20, 2010 MRI could have been caused by the 2010 accident or was merely a natural finding, describing the disc bulge as "so small." Dr. Crandall opined in his only report (dated May 20, 2015), that the 2010 accident resulted in back and leg pain, and that the herniated discs "were brought about by this motor vehicle accident because the MRI scan shows the discs and the symptoms that correlate precisely with those discs [beginning] right away after the accident." In his testimony, Dr. Crandall noted that he relied on Dr. Fields's assessment of causation of Munguia's herniated discs.

**¶15**       Because the record includes substantial evidence supporting the jury verdict, *see Logerquist*, 196 Ariz. at 488, ¶ 52,[3] Munguia's argument that the court erred by denying her request for judgment as a matter of law also fails. *See* Ariz. R. Civ. P. 50(a) (stating judgment as a matter of law should be granted "[i]f . . . a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue").

## II.    The Biomechanical Expert's Testimony Was Not a Specific Medical Opinion.

**¶16**       Munguia also argues the superior court erred by allowing Logan's biomechanical expert Dr. Peles to testify to specific causation of Munguia's injuries, instead of opining on general causation, and that his testimony prejudiced Munguia.

**¶17**       In Arizona, "it is not necessary that an expert witness be a medical doctor in order to offer testimony regarding the causation of physical injuries so long as the trial court has properly determined that the expert has specialized knowledge that will assist the jury in its resolution

---

[3]       We need not reach whether the alleged conduct represented negligence *per se* under the traffic laws. The jury was instructed to "determine whether that negligence [*per se*] was a cause of injury to Plaintiff Tammy Munguia." Without deciding whether substantial evidence supported a finding of negligence *per se*, the record provided substantial evidence for the jury to conclude the 2010 accident did not cause Munguia a compensable injury. *See Warrington*, 197 Ariz. at 69, ¶ 4.

of that issue." *Lohmeier*, 214 Ariz. at 64, ¶ 28. An expert's "degree of qualification goes to the weight given the testimony, not its admissibility." *State v. Davolt,* 207 Ariz. 191, 210, ¶ 70 (2004).

**¶18** Dr. Peles provided opinions on general causation within the scope of his qualifications as a biomechanical expert, and the weighing of those opinions was within the jury's province. *See Logerquist*, 196 Ariz. at 488, ¶ 52. Dr. Peles considered the seat design in Munguia's vehicle and other factors and expressly stated "[t]here would not be a mechanism [of injury] or a force level that would produce disc herniations in this accident." He explained his conclusion in detail, including why it applied also to Munguia's weakened (desiccated) discs and her position in the vehicle at the time of the accident. Dr. Peles testified that standing up from a chair and ordinary activities of daily life, such as jogging, exert forces of greater magnitude than caused by this rear-end collision.[4] When asked what caused Munguia's disc herniations, Dr. Peles stated that was beyond the scope of his study.

**¶19** Although Munguia argues Dr. Peles was "unqualified to diagnose what caused a specific person's medical injuries" and that he is not a licensed medical doctor and never examined Munguia or even reviewed her MRI scans, Dr. Peles's opinions remained within the scope of his qualification and provided relevant information. *See Lohmeier*, 214 Ariz. at 64, ¶ 28; *Logerquist*, 196 Ariz. at 488, ¶ 52.

### III. The Evidence Regarding the 2005 and 2011 Car Accidents Was Relevant and Non-Prejudicial.

**¶20** Munguia further argues that the superior court improperly permitted Logan to present evidence regarding the 2005 and 2011 accidents. She asserts that it was "highly prejudicial" for Logan to assert that those accidents caused Munguia's injuries without designating nonparties at fault or providing expert testimony on causation. Logan argues she introduced the evidence "as an alternative explanation for Munguia's secondary gain behavior and to question her credibility."

**¶21** In her opening brief, Munguia conceded no prejudicial error occurred regarding evidence pertaining to the 2005 accident. The issue is,

---

[4] In crash tests studies at low severity impacts—within the Delta-Vs of this accident's range—researchers utilize volunteers because they are confident no injury mechanism exists regarding biomechanics of the human spine to cause disc herniations to a volunteer.

thus, waived on appeal. *See Polanco v. Indus. Comm'n*, 214 Ariz. 489, 491, ¶ 6, n.2 (App. 2007) (holding that unsupported, undeveloped arguments are waived on appeal); *State v. Carver*, 160 Ariz. 167, 175 (1989) ("Failure to argue a claim usually constitutes abandonment and waiver of that claim.").

**¶22**         Regarding the 2011 accident, the superior court ordered, before trial, that "neither party shall convey to the Jury either directly or indirectly, any evidence or argument as to lawsuits arising from [the 2005 and 2011] accidents but may present evidence subject to trial objection as to the existence of those accidents and any injuries that may have occurred therefrom that impact Plaintiff's medical condition."   The evidence, as limited by the superior court, was properly admitted as it was relevant to Munguia's medical condition, credibility, and secondary-gain behavior, including her failure to inform Dr. Ehteshami about the 2011 accident and because she testified she recovered from the 2011 accident to her pre-2011-collision condition, while also claiming that her headaches returned after the 2011 collision. *See State v. Holden*, 88 Ariz. 43, 54 (1960) ("[A] party against whom a witness is produced has a right to show everything which may in the slightest degree affect [the witness's] credibility."); *see also Gemstar Ltd. v. Ernst & Young*, 185 Ariz. 493, 506 (1996) ("We will not disturb a trial court's rulings on the exclusion or admission of evidence unless a clear abuse of discretion appears and prejudice results.").

**¶23**         Moreover, Logan was not arguing the 2011 accident caused any part of Munguia's injuries, as an affirmative defense or otherwise. Therefore, she was not obligated to designate any nonparty at fault related to the 2011 accident. *See* A.R.S. § 12-2506(B) ("Negligence or fault of a nonparty may be considered . . . if the defending party gives notice before trial, in accordance with requirements established by court rule, that a nonparty was wholly or partially at fault.").   Contrary to Munguia's argument, Logan was also not required to introduce any expert witnesses' opinions on causation regarding the 2011 accident. *See Rasor v. Nw. Hosp. LLC*, 244 Ariz. 423, 425, ¶ 7 (App. 2018) ("[U]nless a causal relationship is readily apparent to the trier of fact, expert medical testimony normally is required to establish proximate cause in a medical negligence case.") (quotation omitted).

### IV. The Issue of Logan's Compliance with the Requirements of A.R.S. § 12-2603 Is Moot.

**¶24** Munguia next argues the superior court erred by enabling the jury to consider an alleged fault of a nonparty spinal surgeon without full compliance with the expert-witness designation process.[5]

**¶25** Whether Logan fully complied with procedural rules in providing a preliminary expert witness opinion regarding Dr. Ehteshami's standard of care for the jury to apportion fault for Munguia's injuries between Dr. Ehteshami and Logan has no practical effect or relevance to the court's finding that substantial evidence supported the jury's defense verdict and ruling on Munguia's motion for a new trial. This issue is moot. *See Arpaio v. Maricopa Cty. Bd. of Supervisors*, 225 Ariz. 358, 361, ¶ 7 (App. 2010) ("A case becomes moot when an event occurs which would cause the outcome of the appeal to have no practical effect on the parties.") (quotation omitted); *see also Kondaur Capital Corp. v. Pinal County*, 235 Ariz. 189, 193, ¶¶ 8-9 (App. 2014) (holding that plaintiff's claim against the sheriff's office's handling of a writ of restitution was resolved by the property occupants' eviction).

### V. Attorneys' Fees and Costs on Appeal.

**¶26** Because neither party requests that we award attorneys' fees incurred on appeal, we award none. Logan, however, is entitled to recover her costs on appeal pursuant to A.R.S. § 12-342 upon compliance with Arizona Rules of Civil Appellate Procedure 21.

---

[5] Munguia also waived the issue because she failed to develop this argument as part of her petition for special action to our supreme court filed in this case in 2016. *See Cramer v. Starr*, 240 Ariz. 4, 8, ¶ 14, n.1 (2016); *see also DeElena v. S. Pac. Co.*, 121 Ariz. 563, 572 (1979) (issues not argued on appeal were treated as abandoned).

## CONCLUSION

¶27　　　For the reasons stated above, we affirm the judgment in favor of Logan.



AMY M. WOOD • Clerk of the Court
FILED:　AA