2014 UT App 170

**UNITED FIRE GROUP, Plaintiff and Appellant,**

v.

**STAKER AND PARSON COMPANIES, Defendant and Appellee.**

**No. 20130451–CA.**

Court of Appeals of Utah.

July 25, 2014.

Jan P. Malmberg and Robert K. Hilder, for Appellant.

George W. Burbidge II and Nathan R. White, for Appellee.

Judge STEPHEN L. ROTH and Senior Judge JUDITH M. BILLINGS concurred.[1]

ORME, Judge:

¶ 1 Plaintiff United Fire Group appeals the district court's summary judgment in favor of defendant Staker and Parson Companies (Staker). The district court granted Staker's motion for summary judgment and dismissed the case because it determined that United Fire could not present a prima facie case of negligence against Staker in the absence of an expert witness. We reverse and remand.

## BACKGROUND[2]

¶ 2 On the evening of October 14, 2009, Scott and Brenda McDowell were traveling to Ogden, Utah, to visit a family member. The McDowells exited Interstate 15 at the Ogden 12th Street exit but quickly realized that they were in the wrong location. They turned from 12th Street into an adjacent parking lot to call for directions. After getting directions, the McDowells turned back onto 12th Street and attempted to return westbound to the freeway.

¶ 3 This particular stretch of 12th Street was undergoing major construction at the time. On the night that the McDowells found themselves traveling on 12th Street, Staker—the company performing the 12th Street construction project-had blocked off the westbound lanes of 12th Street and diverted westbound traffic to one of what would normally be two eastbound lanes. There was, however, no barrier preventing them from entering the westbound lanes from the parking lot they were in or any sign warning them not to do so.

¶ 4 The McDowells traveled a short distance on the newly paved westbound lanes without incident but soon ran off the end of the paved section of road and dropped into the unfinished section, sustaining injuries. There were no signs or barriers immediately preceding the dropoff.

¶ 5 United Fire, the McDowells' insurer, paid for the McDowells' medical bills and vehicle damage related to the accident. United Fire, as the McDowells' subrogee, then sued Staker claiming it negligently maintained the construction zone. Following the close of discovery, Staker filed a motion for summary judgment on the basis that United Fire, which had not designated an expert, could not establish the standard of care or a breach of that standard in this case without expert testimony. United Fire, in addition to resisting Staker's motion for summary judgment, also moved to hold a new discovery scheduling conference and to amend its complaint to add additional plaintiffs.

¶ 6 The district court granted Staker's motion for summary judgment, noting, "United Fire needed to offer expert testimony in order to establish the standard of care for temporary traffic control during the major road construction that was taking place at the time of the [a]ccident. It did not do so." Therefore, the district court concluded, because "United Fire cannot establish all of the essential elements for a negligence claim," summary judgment in favor of Staker was appropriate. The district court granted Staker's motion and dismissed United Fire's negligence action. As a result, the district court did not rule on United Fire's pending motions because the court concluded that "the summary judgment render[ed] all other issues moot." United Fire appeals.

## ISSUE AND STANDARD OF REVIEW

¶ 7 United Fire challenges the district court's determination that an expert was required to establish the standard of care for temporary traffic control and the breach of that standard in this case. "We review a summary judgment determination for correctness, granting no deference to the [district] court's legal conclusions." *Salt Lake County v. Holliday Water Co.*, 2010 UT 45, ¶ 14, 234 P.3d 1105 (alteration in original)

---

1. The Honorable Judith M. Billings, Senior Judge, sat by special assignment as authorized by law. *See generally* Utah Code Jud. Admin. R. 11–201(6).

2. We recite the facts and reasonable inferences that may be drawn therefrom in the light most favorable to United Fire as the nonmoving party. *See Orvis v. Johnson*, 2008 UT 2, ¶ 6, 177 P.3d 600.

(citation and internal quotation marks omitted).

## ANALYSIS

¶ 8 To prevail on its negligence claim, United Fire must establish four essential elements: (1) that Staker owed the McDowells a duty, (2) that Staker breached that duty, (3) that the breach of duty was the proximate cause of the McDowells' injuries, and (4) that the McDowells in fact suffered injuries or damages. *See Thurston v. Workers Comp. Fund,* 2003 UT App 438, ¶ 12, 83 P.3d 391. In the face of a well-presented motion for summary judgment by the defendant, "[a] plaintiff's failure to present evidence that, if believed by the trier of fact, would establish any one of the [elements] of [a] prima facie case justifies a grant of summary judgment to the defendant." *Dikeou v. Osborn,* 881 P.2d 943, 946 (Utah Ct.App. 1994). The district court determined that because United Fire failed to designate an expert witness to testify about the standard of care for temporary traffic control, it could not present evidence that, if believed by a jury, would "establish the scope of Staker's legal duty or demonstrate that Staker breached that duty."

¶ 9 United Fire argues that expert testimony should not have been required in this case because the matter at issue is within the knowledge of the average juror. We disagree that the standard of care for temporary traffic control is ordinarily within the knowledge of the average juror. As we have previously observed,

> Where the average person has little understanding of the duties owed by particular trades or professions, expert testimony must ordinarily be presented to establish the standard of care. For instance, expert testimony has been required to establish the standard of care for medical doctors, architects, engineers, insurance brokers, and professional estate executors.

*Wycalis v. Guardian Title,* 780 P.2d 821, 826 n. 8 (Utah Ct.App.1989) (citations omitted). We reject United Fire's contention that the average juror understands the intricacies of temporary traffic control during a major construction project.

¶ 10 As required by law, UDOT publishes a manual of traffic-control standards and specifications that must be used on any highway open to public travel in Utah (the Manual). *See* Utah Code Ann. § 41–6a–301 (LexisNexis 2010) [3] (stating that UDOT shall make rules adopting standards and specifications for a uniform system of traffic-control devices that shall "correlate with, and where possible conform to, the system set forth in the most recent edition of the 'Manual on Uniform Traffic Control Devices for Streets and Highways'"); Utah Admin. Code R920–1–1, –2 ("The purpose of this rule is to adopt standards and establish specifications for a uniform system of traffic-control devices used on all highways open to public travel.... Incorporated by reference is the [Manual]."). The Manual is 985 pages long, comprises nine parts and numerous subparts, and contains many technical instructions, tables, and diagrams. *See* Utah Dep't of Transp., Utah Manual on Uniform Traffic Control Devices for Streets and Highways (2011), *available at* http://www.udot.utah.gov/main/uconowner.gf?n=12281504735606387 (last visited July 8, 2014).

¶ 11 The Manual states that any "decision to use a particular device at a particular location should be made on the basis of either an engineering study or the application of engineering judgment." *Id.* § 1A.09.02a (noting additionally that while the Manual provides standards and guidance, it should "not be considered a substitute for engineering judgment"). Furthermore, it requires that engineering judgment be exercised and engineering studies be performed "by an engineer, or by an individual working under the supervision of an engineer." *Id.* § 1A.13.03, .64, .65. In this particular case, Staker's traffic control foreman received training and certification in traffic control through the Associated General Contractors association and UDOT, and he maintains that certification by attending training and recertification

---

**3.** Because the provisions in effect at the relevant time do not differ in any way material to our analysis from the statutory provisions now in effect, we cite the current version of the Utah Code as a convenience to the reader.

classes every three years. Additionally, the Manual grants traffic controllers discretion to adjust temporary traffic control to case-specific variables, such as "type of highway, road user conditions, duration of operation, physical constraints, and the nearness of the work space or incident management activity to road users." *Id.* § 6A.01.07, .13.

¶ 12 "In the absence of expert assistance, jurors would not likely possess the information or understanding necessary" to interpret the technical specifications contained in the Manual and the standards to which a temporary traffic controller must adhere. *See Jenkins v. Jordan Valley Water Conservancy Dist.*, 2013 UT 59, ¶¶ 19–20, 321 P.3d 1049. Moreover, a traffic-control engineer must make adjustments and decisions that are "inherently complex and case-specific" and that require a sophisticated understanding of the principles of traffic control. *See id.* Therefore, we conclude that, as a general matter, the nature of temporary traffic control in major road construction "removes the particularities of its practice from the knowledge and understanding of the average citizen." *Nixdorf v. Hicken*, 612 P.2d 348, 352 (Utah 1980). Only an expert would be intimately familiar with the industry standards for temporary traffic control.[4]

¶ 13 But United Fire's claims are based not on perceived deficiencies in the traffic-control signage and devices employed in this case, but on a complete lack of signs or devices to warn or guide the McDowells away from danger. Scott McDowell's affidavit states that "[n]othing was blocking the road"; there were some cones of unknown purpose, but "no flashers, and no warning signs"—"[n]othing was marked" and there was even a "sign with an arrow pointing traffic down the street." He also noted, with our emphasis, as follows:

> Before [the] abrupt drop off, no flashing lights were operating and no cones or barrels were in front of the road. The road did not contain a sign in front of the drop off, stating "road closed" or even a barrier in front of the drop off. Nothing indicated

the road had ceased and had no through travel. No workers were present in the area, and nothing was blocking the road. *Nothing at all.*

¶ 14 Therefore, if the jury believes United Fire's version of events—namely, that there was a total absence of warning signs—"there is no question of skill and judgment, no question of practice beyond the knowledge of laymen which must be established through expert testimony." *Nixdorf*, 612 P.2d at 355. No expert is required to determine that Staker should have given at least some warning about the dangerous road condition that it created or done something to guide traffic away from it. *See Hansen v. Clyde*, 89 Utah 31, 56 P.2d 1366, 1368 (1936) ("When a hazard is created by a contractor upon a public highway, it becomes his duty to place suitable barricades or warning signs and in the nighttime to properly place lights to warn the traveling public of the presence of the hazard."); *B.R. ex rel. Jeffs v. West*, 2012 UT 11, ¶ 21, 275 P.3d 228 ("As a general rule, we all have a duty to exercise care when engaging in affirmative conduct that creates a risk of physical harm to others."). *Cf. Nixdorf*, 612 P.2d at 352 ("[E]xpert testimony is unnecessary to establish the standard of care owed the plaintiff where the propriety of the treatment received is within the common knowledge and experience of the layman. The loss of a surgical instrument or other paraphernalia, in the operating site, exemplifies this type of treatment."); *Nguyen v. IHC Health Servs., Inc.*, 2010 UT App 85, ¶¶ 17–18, 232 P.3d 529 (holding that no expert was needed to demonstrate inadequacy of disclosure in informed consent case when claim was that *no* disclosure was made).

¶ 15 But if the jury believes the thrust of Staker's version of events—that is, if the jury finds that there were at least some warning signs and devices in place over the route the McDowells traveled—and the question becomes the adequacy of the warning thus imparted, United Fire cannot prevail without an expert. *See Salt Lake City Sch. Dist. v. Galbraith & Green, Inc.*, 740 P.2d 284, 289

---

**4.** We previously considered a similar case and likewise there determined that expert testimony is necessary to establish the standard of care for temporary traffic-control measures. *See Macintosh v. Staker Paving & Constr. Co.*, 2009 UT App 96U, 2009 WL 953712.

(Utah Ct.App.1987) ("If the matter at issue in the case is one which requires special knowledge not held by the trier of fact, expert evidence must be presented."). As we have already concluded, in the absence of an expert to testify about temporary traffic control, "jurors would not likely possess the information or understanding necessary to make such assessments." *See Jenkins v. Jordan Valley Water Conservancy Dist.*, 2013 UT 59, ¶ 20, 321 P.3d 1049. And "left to their own devices, jurors would be forced to speculate about" the standard of care for temporary traffic control and whether Staker failed to conform to that standard in this case. "Such speculation has no place in our courtrooms—on matters of duty, breach, or otherwise." *Id.* ¶ 21.

## CONCLUSION

¶ 16 The average person has little understanding of the standard of care for temporary traffic control in a major construction project and therefore expert testimony must usually be presented to establish the standard of care for warning travelers of danger. However, if the jury believes United Fire's evidence that there was a complete lack of signage warning the McDowells of dangerous road conditions or of devices guiding them away from such danger, the jury may well find for United Fire even in the absence of expert testimony. Thus, we reverse the grant of summary judgment to Staker and remand to the district court for further proceedings consistent with this opinion.[5]

---

5. On remand, the district court should presumably also consider and rule upon United Fire's motions that the court did not previously reach due to its summary disposition of the case.