IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

ELLEN FONG, *Plaintiff/Appellant,*

*v.*

CITY OF PHOENIX, et al., *Defendants/Appellees.*

No. 1 CA-CV 23-0520
FILED 06-06-2024

Appeal from the Superior Court in Maricopa County
CV2021-013212
The Honorable Joan M. Sinclair, Judge

**REVERSED**

COUNSEL

Shorall McGoldrick Zerlaut, Phoenix
By Thomas J. Shorall, Jr., Scott M. Zerlaut
*Counsel for Plaintiff/Appellant*

Broening Oberg Woods & Wilson, P.C., Phoenix
By Kelley M. Jancaitis, Jessica J. Kokal, Jonathan Y. Yu
*Counsel for Defendant/Appellee City of Phoenix*

O'Connor & Dyet, P.C., Tempe
By Daniel J. O'Connor, Travis B. Hill
*Counsel for Defendant/Appellee Trafficade Service, LLC*

---

**OPINION**

---

Presiding Judge Daniel J. Kiley delivered the opinion of the Court, in which Judge Kent E. Cattani and Judge D. Steven Williams joined.

---

**K I L E Y**, Judge:

¶1        Ellen Fong was badly hurt when she fell into a ditch excavated by workers repairing an underground water pipe. She sued the City of Phoenix (the "City") and its independent contractor, Trafficade Service LLC ("Trafficade") (collectively, "Defendants"), alleging that they neither adequately warned of nor properly secured the excavation site. The superior court granted summary judgment in Defendants' favor due to Fong's failure to present expert testimony on the applicable standard of care and breach thereof. Concluding that expert testimony was not required to establish the standard of care and breach, we reverse and remand for further proceedings.

**FACTS AND PROCEDURAL HISTORY**

¶2        Fong and her boyfriend John Belpedio went for a bicycle ride in Phoenix on December 6, 2020. Viewed in the requisite light most favorable to Fong as the party against whom summary judgment was granted, *see Doe v. Roman Cath. Church of Diocese of Phoenix*, 255 Ariz. 483, 486, ¶ 2 (App. 2023), the evidence shows that Fong and Belpedio rode north on 8th Avenue before turning west onto Washington Street, a one-way street. Three of Washington Street's four motor vehicle lanes were closed due to ongoing repairs of an underground water main. As they rode single file in the marked bike lane with Fong in the lead, Fong and Belpedio saw barricades and signs redirecting motor vehicle traffic. The barricades and signs had been set up by Trafficade, which had been hired by the City to provide traffic control devices. Fong and Belpedio did not see any signs or barricades indicating that the bike lane was closed.

¶3        The signage that Trafficade ordered for delivery to the construction site on Washington Street included three bike lane-specific signs, reading "Bike Lane Closed Ahead," "Bike Lane Closed," and "Bikes

May Use Full Lane," respectively. For unexplained reasons, however, these three signs were not in place that day.[1]

¶4        As they approached 10th Avenue, Fong and Belpedio saw a parked construction truck blocking the bike lane. After pedaling past the truck on the right side, they moved back into the bike lane and continued heading west. Fong then rode into an eight-by-eight-foot, four-foot-deep excavation that encroached into the bike lane. The excavation was uncovered, unbarricaded, and obscured by the shadow of a nearby backhoe. Fong suffered severe injuries from the fall.

¶5        At the time of the accident, most of the work crew was on lunch break. Only one member of the work crew stayed behind to "protect the job site." Although the crew member later testified at a deposition that he sat "on [his] backhoe" so that he could "see people that [were] coming," he also admitted that he was "on the phone with [his] wife talking" and "wasn't really paying attention." He further testified that he saw Fong approaching and called out, "Ma'am, there's a hole right here," but she gave no indication that she heard him.

¶6        Fong sued the City for negligence, later adding Trafficade as a defendant. After the deadline for initial expert disclosures had passed (but before the deadline for rebuttal expert disclosures), Trafficade moved for summary judgment, arguing that Fong could not establish the applicable standard of care without expert testimony. The City joined Trafficade's motion, arguing that Trafficade's alleged negligence "is the only conduct which forms the basis for the claim" against the City and thus the City was entitled to summary judgment to the same extent as Trafficade.

¶7        Fong then served a supplemental disclosure statement identifying an additional theory of liability against the City—namely, that the City was independently negligent for failing to cover or adequately monitor the excavation site during the crew's lunch break. The City then moved for summary judgment as to this claim, arguing that Fong had not "timely disclosed expert testimony establishing a *prima facie* case of independent negligence against the City."

¶8        The court granted summary judgment in Defendants' favor, concluding that Fong's failure to present expert testimony to establish the

---

[1] The parties dispute whether the bike lane-specific signs were in place on December 6. For purposes of this appeal, we accept as true evidence Fong presented that they were not. *See Doe*, 255 Ariz. at 486, ¶ 2.

applicable standard of care (and breach thereof) was fatal to her claims. Noting that traffic control standards are set forth in "traffic control plans" and related manuals, the court reasoned that "[a] jury cannot be expected to wade through hundreds of pages of technical documents without guidance to determine if the Defendants complied with these manuals." The court likewise found that Fong's theory of independent negligence by the City failed for lack of expert testimony regarding the standard of care and breach thereof.

¶9 The court entered final judgment and Fong timely appealed. We have jurisdiction under A.R.S. § 12-2101(A)(1).

## DISCUSSION

¶10 Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(a). We review a grant of summary judgment *de novo* and view the evidence and reasonable inferences in the light most favorable to Fong as the non-moving party. *See Zambrano v. M & RC II LLC*, 254 Ariz. 53, 58, ¶ 9 (2022).

## I.    Standard of Review

¶11 Although Defendants concede that the grant of summary judgment is reviewed *de novo*, they contend that this Court must defer to the superior court's determination that expert testimony is necessary to establish Fong's negligence claim. In support of their position, Defendants cite *Warner v. Southwest Desert Images, LLC*, in which we stated:

> At trial, "the determination of areas where expert testimony is appropriate is within the trial court's discretion." *State v. Mosley*, [119 Ariz. 393, 400 (1978)]. We see no reason the same standard should not apply to a trial court's decision whether expert testimony is required [to prove the licensed professional's standard of care or liability for the claim] under [A.R.S.] § 12-2602.

218 Ariz. 121, 128, ¶ 14 (App. 2008). *Warner* held that the superior court erred in dismissing a plaintiff's negligence claim against a licensed professional for failure to provide a preliminary expert opinion affidavit pursuant to § 12-2602(B) because the court failed to give the plaintiff a chance to cure her omission as required by § 12-2602(E). *See id*. at 129, ¶¶ 19-20. Because the *Warner* court's statement about the standard of review applicable to a trial court's decision that a plaintiff's claim requires expert

support was not necessary to *Warner*'s holding that the superior court erred by failing to adhere to § 12-2602(E)'s procedural requirements, it is not binding. *See Olewin v. Nobel Mfg., LLC*, 254 Ariz. 346, 351, ¶ 19 (App. 2023) (noting that a court's statement of law "unnecessary to its decision" is *obiter dictum* and "thus not precedential") (quoting *Alejandro v. Harrison*, 223 Ariz. 21, 25, ¶ 12 (App. 2009)).

¶12 Further, to the extent *Warner* interpreted *Mosley* as standing for the proposition that a trial judge's determination that expert testimony is required to prove the plaintiff's claim is reviewed for abuse of discretion, we disagree. In *Mosley*, the Arizona Supreme Court held that the superior court did not abuse its discretion in allowing a detective to testify at a criminal trial about the significance of the "trackmarks" he observed on the defendant's arms, explaining that "the determination of areas where expert testimony is appropriate is within the trial court's discretion." 119 Ariz. at 399-400. By relying on *Mosley* for the proposition that a trial judge's determination that expert testimony is required to prove the plaintiff's claim is reviewed for abuse of discretion, *Warner* erroneously conflated the standard of review that applies to a determination that expert evidence is admissible with the standard that applies to a determination that a claim is not viable without expert support.

¶13 As courts that have considered the issue have recognized, whether expert testimony is *admissible* and whether it is *required* "are meaningfully different questions." *KS Condo, LLC v. Fairfax Vill. Condo. VII*, 302 A.3d 503, 508 n.1 (D.C. 2023). The admissibility of expert testimony is generally a fact-bound inquiry that focuses on whether the proffered expert has sufficient knowledge, skill, experience, or education to "provide the jurors with useful information outside their common understanding or experience." *State v. Moran*, 151 Ariz. 378, 381 (1986); *see also* Ariz. R. Evid. 702(a). Like other fact-intensive determinations, the admissibility of expert testimony is reviewed for abuse of discretion. *Cf. Valley Med. Specialists v. Farber*, 194 Ariz. 363, 366-67, ¶ 11 (1999) (when a decision requires "a fact-intensive inquiry," "we will give substantial deference both to the trial court's findings of fact and its application of law to fact").

¶14 By contrast, whether expert testimony is necessary to prove a plaintiff's claim requires the court to determine whether the plaintiff's evidence, without expert support, is sufficient to establish the elements of the claim. *See KS Condo*, 302 A.3d at 508 n.1 (noting that whether expert testimony "is required to sustain a claim . . . appears to be a legal question that probes whether the evidence is sufficient to sustain a verdict absent expert testimony"); *AKIB Constr. Inc. v. Shipwash*, 582 S.W.3d 791, 802 (Tex.

App. 2019) ("Whether expert testimony is necessary is not an admissibility-of-the-evidence question; instead, it is [a] question of what legal weight should be given to non-expert evidence in the record."). As Arizona courts have long held, whether a claimant's evidence establishes a prima facie claim for relief sufficient to withstand summary judgment is a question of law subject to *de novo* review. *See, e.g.*, *Cox v. May Dep't Store Co.*, 183 Ariz. 361, 363 (App. 1995) ("On an appeal from summary judgment, this court reviews the record *de novo* and applies the same standard as the trial court.").

¶15        Consistent with this distinction, the majority of courts that have addressed the issue have held that whether expert testimony is required to prove a plaintiff's claim is a question of law that is reviewed *de novo*. *See, e.g.*, *Culliton v. Hope Cmty. Res., Inc.*, 491 P.3d 1088, 1093 (Alaska 2021) ("Whether expert testimony is required to show a breach of a duty of care represents a question of law to which we apply our independent judgment.") (citation omitted); *Doe v. Hartford Roman Cath. Diocesan Corp.*, 119 A.3d 462, 478 (Conn. 2015) (noting that the trial court's "determination of whether expert testimony was needed to support the plaintiff's claim of negligence against the defendant was a legal determination, and, thus, our review is plenary") (citation omitted); *Guzick v. Kimball*, 869 N.W.2d 42, 46-47 (Minn. 2015) ("[W]hether expert testimony is required to establish a prima facie case is a question of law that we review de novo."); *FFE Transp. Servs., Inc. v. Fulgham*, 154 S.W.3d 84, 89-90 (Tex. 2004) (concluding that "de novo is the appropriate standard of review" applicable to a "trial court's determination regarding whether expert testimony was required" and noting that this "conclusion is consistent with those of other state supreme courts") (collecting cases); *Vandermay v. Clayton*, 984 P.2d 272, 277 (Or. 1999) (noting that "whether plaintiff was required to present expert testimony to establish that defendant had breached the standard of care" is "a question of law"); *Bauer v. White*, 976 P.2d 664, 666 (Wash. Ct. App. 1999) (holding that whether plaintiff must present expert evidence to establish standard of care in medical malpractice claim is question of law subject to *de novo* review).

¶16        Courts that have applied an abuse of discretion standard when reviewing the dismissal of a claim for lack of expert testimony have cited the principle that the admissibility of expert testimony is deferentially reviewed. *See Kanter v. Metropolitan Med. Ctr.*, 384 N.W.2d 914, 916 (Minn. App. 1986) (trial court granted summary judgment on wrongful death claim against nurse for leaving plaintiff's decedent unattended in a bathtub based on plaintiff's failure to present expert testimony; in affirming summary judgment, court cited trial judge's "broad" discretion to "allow

expert testimony" as support for its conclusion that "[t]he trial court's decision requiring expert testimony was not an abuse of its discretion"); *District of Columbia v. Davis*, 386 A.2d 1195, 1200 (D.C. 1978) (trial court granted directed verdict in favor of city on claim for negligent training and supervision of police officers based on plaintiff's failure to provide expert testimony; in affirming directed verdict, court stated that the decision of whether to "require" expert testimony is "presumably" reviewed under the same standard used when reviewing "the decision whether or not to admit" expert testimony). We find these cases unpersuasive because, as discussed above, the admissibility and necessity of expert testimony are distinct questions.

¶17　　Because nothing in *Mosley* requires a different result, we join the majority of jurisdictions in holding that whether a plaintiff's failure to present expert testimony is fatal to her claim is a question of law that is reviewed *de novo*. Any language to the contrary in *Warner* is *dicta* of which we hereby disapprove.

## II.　Expert Testimony Requirement

¶18　　Fong alleges that Defendants were negligent in failing to barricade the bike lane or post adequate signs warning of the excavation. She also alleges that, apart from any negligence by Trafficade in setting up signs and barricades, the City was independently negligent by failing to adequately monitor or cover the excavation at the time of the accident.

¶19　　"A negligence claim requires proof of four elements: '(1) a duty requiring the defendant to conform to a certain standard of care; (2) a breach by the defendant of that standard; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual damages.'" *Cal-Am Props. Inc. v. Edais Eng'g Inc.*, 253 Ariz. 78, 81, ¶ 5 (2022) (quoting *Gipson v. Kasey*, 214 Ariz. 141, 143, ¶ 9 (2007)). Here, Defendants do not, and could not, dispute that they owed a duty to Fong. *See Coburn v. City of Tucson*, 143 Ariz. 76, 78 (App. 1984) (a municipality "has a duty to keep its streets reasonably safe for travel"); *State v. Cress*, 22 Ariz. App. 490, 493 (App. 1974) (road contractor hired by the State "had a duty to maintain the roadway in a safe condition"). The parties dispute, however, whether Fong's negligence claim requires expert testimony to establish the applicable standard of care.

¶20　　Fong asserts that expert testimony was not required to establish the standard of care because Defendants purportedly "admitted" that they were bound to adhere to the Phoenix Traffic Barricade Manual

(the "TBM"), which "required specific signs closing the bike lane." In response, Defendants deny that they ever admitted that either the TBM or the Manual on Uniform Traffic Control Devices (the "MUTCD") establishes the standard of care. Instead, Defendants argue, they merely acknowledged that the manuals were *relevant* to the standard of care.

¶21            Because the record supports Defendants' characterization of their position during the proceedings below—*i.e.*, that the TBM and MUTCD are relevant to, but not conclusive of, the standard of care—we reject Fong's argument that Defendants have conceded the applicable standard of care.

¶22            Fong next argues that expert testimony is not necessary to prove her negligence claim because "a jury is competent to determine the standard for itself." Defendants respond that "the standard of care for temporary traffic control" is not a matter of common knowledge because "[t]raffic engineering, design, and highway safety are specialized disciplines" whose "practitioners use empirical tools to make informed decisions." Emphasizing that "the City ordered and Trafficade placed over a hundred other signs and traffic control devices with varying combinations of bright coloring, flags, and flashing lights, in the area immediately adjacent to the excavation," Defendants contend that a jury cannot determine "how an ordinary person should be expected to react to these specific circumstances . . . without assistance from an expert."

¶23            In an ordinary negligence action, the standard of care is that of "a reasonably prudent [person] under the circumstances." *Bell v. Maricopa Med. Ctr.*, 157 Ariz. 192, 194 (App. 1988). The plaintiff need not present expert testimony to establish the standard of care and breach thereof in such cases "because the jury can rely on its own experience in determining whether the defendant acted with reasonable care under the circumstances." *Id.*

¶24            By contrast, where "the defendant has held himself out to be trained in a particular trade or profession," a heightened standard of care may apply that requires the defendant to act with "the skill and knowledge normally possessed by members of that trade or profession in good standing in similar communities." *Powder Horn Nursery, Inc. v. Soil & Plant Lab'y, Inc.*, 119 Ariz. 78, 82 (App. 1978) (quoting *Kreisman v. Thomas*, 12 Ariz. App. 215, 220 (App. 1970)). In such cases, expert testimony is required to establish the standard of care unless "the negligence is so grossly apparent that a lay person would have no difficulty recognizing it," *Asphalt Eng'rs, Inc. v. Galusha*, 160 Ariz. 134, 135-36 (App. 1989), or the allegedly negligent

"act or omission comes within the realm of common knowledge," *Hunter Contracting Co. v. Superior Court*, 190 Ariz. 318, 321 (App. 1997) (quoting *Revels v. Pohle*, 101 Ariz. 208, 210 (1966)).

¶25 To determine the applicable standard of care here, we begin with the Arizona Supreme Court's decision in *Rossell v. Volkswagen of America*, 147 Ariz. 160 (1985). In *Rossell*, the plaintiff's minor daughter suffered severe burns when the car in which she was traveling overturned, causing the battery in the passenger compartment to leak sulfuric acid. *Id.* at 163. The plaintiff alleged, *inter alia*, that the manufacturer was negligent in designing cars with batteries located inside the passenger compartment. *Id.* After a jury found for the plaintiff, the manufacturer appealed, arguing that the plaintiff's claim failed as a matter of law because she did not present any expert evidence of the standard of care applicable to automobile designers or manufacturers. *Id.* at 163-64. The *Rossell* court held that expert testimony was not required to establish the manufacturer's standard of care, instead applying the general rule that "the jury is permitted to decide what is reasonable from the common experience of mankind." *Id.* at 166-67. In so holding, the *Rossell* court distinguished professional malpractice cases by noting that those cases "involve . . . the liability of professionals who generally work in close relationship with their clients or patients," like physicians and insurance brokers, and are "allowed to create their own standards of reasonably prudent conduct" because of the "special relationship" they have "with their clients or patients." *Id.* at 166. Because manufacturers of "mass-produced products" are unlike "professionals who generally work in close relationship with their clients," *Rossell* held that the plaintiff need not present "explicit expert testimony establishing the standard of care" but instead "need only prove the defendant's conduct presented a foreseeable, unreasonable risk of harm." *Id.* at 166-67. Only if the case presents "factual issues [that] are outside the common understanding of jurors" will "expert testimony . . . be required." *Id.* at 167.

¶26 Here, we see no basis to conclude (nor do Defendants contend) that Defendants have a "special relationship" with the traveling public that would warrant allowing them to "create their own standards of reasonably prudent conduct." *Id.* at 166. On the contrary, it is well-established that the "standard of care imposed upon a municipality is that of an ordinarily prudent [person]." *Beach v. City of Phoenix*, 136 Ariz. 601, 603 (1983) (quoting *City of Phoenix v. Clem*, 28 Ariz. 315, 327 (1925)). And if a municipality hires a private contractor to maintain its roads, the contractor, too, "must exercise reasonable care to avoid injury to the traveling public." *Cohen v. Sahuaro Petrol. & Asphalt Co.*, 17 Ariz. App. 215, 217 (App. 1972); *see also Nelson v. Grayhawk Props. L.L.C.*, 209 Ariz. 437, 440-

41, ¶¶ 13-14 (App. 2004) (independent contractor hired by municipality to design and construct an intersection had a "duty of reasonable care").[2] The conduct of a municipality and its road contractors, in other words, "is governed by the ordinary rules of negligence." *Cohen*, 17 Ariz. App. at 217. We therefore apply the rule enunciated in *Rossell* that expert testimony is necessary to establish what is reasonable only if the case presents factual issues beyond the understanding of lay jurors. 147 Ariz. at 167.

¶27 "In Arizona, juries are composed of motorists who regularly navigate and read signs on the state's highway system." *Mendoza v. State*, 1 CA-CV 18-0350, 2020 WL 85401, at *7, ¶ 40 (Ariz. App. Jan. 7, 2020) (mem. decision). Because lay people routinely read and interpret traffic control signs, we see no reason why lay people serving on a jury would need expert guidance to determine whether traffic control signs and barricades at the scene of an accident adequately conveyed their intended meaning. *See also Merling v. Dep't of Transp.*, 468 A.2d 894, 896 (Pa. Commw. Ct. 1983) (concluding that "the proper maintenance of the berm and guardrails" is not "beyond the knowledge and competence of the jurors as lay persons to determine" because "[w]orn shoulders and collapsed guardrails are not strangers to users of the public roads and jurors are perfectly capable of drawing conclusions from such conditions").

¶28 Courts generally hold that expert testimony is not required to determine the adequacy of warnings aimed at consumers and end users of medical devices, pharmaceuticals, cleaning products and household goods. *See, e.g.*, *Shell Oil Co. v. Gutierrez*, 119 Ariz. 426, 434 (App. 1978) (affirming preclusion of expert testimony on the adequacy of warning labels on drums of industrial solvent and reasoning that such testimony would not "aid the trier of fact" because "[t]he jury was as competent as any expert to determine whether the 'FLAMMABLE LIQUID' label was adequate to convey the hazard"), *abrogated in part on other grounds by Conklin v. Medtronic, Inc.*, 245 Ariz. 501 (2018); *see also Berg v. Johnson & Johnson Consumer Cos.*, 983 F. Supp. 2d 1151, 1160 (D.S.D. 2013) (holding, in a "negligent failure to warn case" brought by a consumer against a manufacturer of hygiene products, that "the applicable standard of care and breach thereof . . . is within a typical layperson's realm of knowledge"); *cf. Derienzo v. Trek Bicycle Corp.*, 376 F. Supp. 2d 537, 563 (S.D. N.Y. 2005) (precluding injured plaintiff's bicycle safety expert from testifying about

---

[2] A municipality that hires a private contractor to maintain its roads remains liable for negligence on the part of the contractor. *See Wiggs v. City of Phoenix*, 198 Ariz. 367, 369-70 (2000) (explaining that a municipality's duty to keep its streets reasonably safe for travel is nondelegable).

"the content and adequacy" of bicycle's safety warnings because "the jury is capable of assessing [those matters] for themselves."). Unlike manufacturer warnings aimed at prescribing physicians and other professionals with specialized knowledge, product safety warnings directed at lay people need only "be reasonably readable and apprise a consumer exercising reasonable care . . . of the existence and seriousness of the danger." *Brown v. Sears, Roebuck & Co.*, 136 Ariz. 556, 563 (App. 1983). Jurors generally do not need the guidance of an expert to determine the adequacy of warnings that are directed at lay people like themselves. *See Marci v. Ames McDonough Co.*, 512 A.2d 548, 552-53 (N.J. App. Div. 1986) (reversing summary judgment in favor of hammer manufacturer and holding that expert testimony was not required to establish inadequacy of safety warnings because "[a] hammer is a commonly used consumer product" and so "it was within the competence of a jury, unaided by expert testimony, to determine . . . the adequacy of the warnings"); *see also Berg*, 983 F. Supp. 2d at 1160 ("Who better to determine whether a warning should be provided than the people to whom the warning would be addressed?"). For the same reason, lay people serving on a jury do not require expert assistance to determine if the signage and barricades around the excavation site gave the traveling public adequate warning of the dangerous condition within.

¶29        In arguing that the court correctly dismissed Fong's claim for lack of expert support, Defendants point out that traffic control is the subject of extensive regulation. Noting that traffic control measures are set forth in the MUTCD and the TBM, Defendants argue that interpreting and applying the provisions of these manuals requires "the exercise of judgment . . . and experience" that "the average juror does not have."

¶30        But evaluating Fong's negligence claim would not require jurors to read or interpret the MUTCD or the TBM. After all, as Defendants concede, neither of those manuals conclusively establishes the applicable standard of care. *See Bell*, 157 Ariz. at 195 ("[T]here is a difference between the evidence the jury considers in determining the standard [of care] and the standard itself."); *see also Am. Smelting & Refin. Co. v. Wusich*, 92 Ariz. 159, 165 (1962) ("When evidence of custom is admitted to assist the jury in determining the duty of care required of the defendant, the custom does not itself define the standard of care required."). Instead, to establish the applicable standard of care and breach thereof, Fong need only show that Defendants failed to act reasonably to warn the traveling public of, or otherwise protect against, the hazard posed by the ongoing street construction. *See also Ofstedahl v. City of Phoenix*, 129 Ariz. 85, 89 (App. 1981)

("[A] governmental body can be held liable for a failure to post adequate warnings at the situs of a known traffic hazard on a public roadway.").

¶31  To be sure, the testimony of a qualified expert may be *admissible* to show whether Defendants adhered to the requirements of the TBM and/or the MUTCD, since such evidence would be relevant to whether they complied with the standard of care. *See, e.g.*, *Dunham v. Pima County*, 161 Ariz. 304, 307 (1989) ("[T]estimony from a qualified expert that the street design or warnings in question failed to adhere to the [MUTCD's] requirements is admissible to prove negligence."). But, as discussed above, admissibility and necessity of expert testimony are different issues, and Fong was not *required* to prove noncompliance with the MUTCD or the TBM to establish that Defendants breached the applicable standard of care. *See DeElena v. S. Pac. Co.*, 121 Ariz. 563, 566 (1979) ("A railroad company is not necessarily free from negligence, even though it may have literally complied with safety statutes or rules; the circumstances may require it to do more.") (citation omitted); *Rossell*, 147 Ariz. at 166 ("What usually is done may be evidence of what ought to be done, but what ought to be done is fixed by a standard of reasonable prudence, whether it usually is complied with or not.") (quoting *Texas & Pac. Ry. Co. v. Behymer*, 189 U.S. 468, 470 (1903)).

¶32  In support of their position, Defendants rely on *United Fire Group v. Staker & Parson Cos.*, 332 P.3d 394 (Utah Ct. App. 2014). There, motorists who were traveling on a street that was under construction were injured when the newly paved portion of the roadway abruptly ended and their car drove over the edge and fell onto an unfinished section. *Id.* at 395, ¶¶ 2-4. After the trial court entered judgment against the motorists' successor-in-interest based on its failure to support its claim with expert testimony, the Utah Court of Appeals reversed, holding that the jurors did not need the guidance of an expert if they accepted the motorists' testimony that no warning signs were present at the site of the accident. *Id.* at ¶¶ 1, 5-6. "No expert is required," the court reasoned, "to determine that [the construction company] should have given at least some warning about the dangerous road condition that it created or done something to guide traffic away from it." *Id.* at 397, ¶ 14.

¶33  The *United Fire Group* court went on to state, however, that if the jurors found that "at least *some* warning signs and devices" were present at the scene, the plaintiff could not prevail without expert testimony. *Id.* at 397, ¶ 15 (emphasis added). The court reasoned that "the standard of care for temporary traffic control is ordinarily [not] within the knowledge of the average juror" because traffic control measures are based on both "technical

specifications" found in traffic control manuals and professional standards "to which a temporary traffic controller must adhere." *Id*. at 396-97, ¶¶ 9, 12. The court further reasoned that decisions and adjustments made by traffic control engineers are "inherently complex" and "require a sophisticated understanding of the principles of traffic control" that is outside "the knowledge and understanding of the average citizen." *Id*. at 397, ¶ 12 (citation omitted).

¶34 Defendants' reliance on *United Fire Group* is unavailing. The Utah court's holding that the MUTCD's "technical specifications" determine the standard of care in some negligence cases (specifically, in negligent roadway construction cases in which "at least some warning signs and devices" were in place, *see id*. at 397, ¶ 15), is inconsistent with binding precedent from our supreme court holding that safety statutes and regulations are not conclusive of the standard of care. *See, e.g., DeElena*, 121 Ariz. at 566-68 (holding that railroad's compliance with safety statutes and rules did not, by itself, defeat plaintiff's negligence claim). Further, we disagree with the Utah court's view that the adequacy of traffic control warning signs is a matter outside "the knowledge and understanding of the average citizen" because it requires "a sophisticated understanding of the principles of traffic control." *See id*. at 397, ¶ 12. As discussed above, lay people on a jury can rely on their own experience traveling on public streets to determine whether the traffic control measures in place at the scene of Fong's accident adequately warned of the hazard posed by the excavation.

¶35 Claims arising out of the allegedly negligent design or construction of a roadway may well require expert support, and we do not suggest otherwise. *See, e.g., Dep't of Transp. v. Mikell*, 493 S.E.2d 219, 223 (Ga. Ct. App. 1997) (holding that because the "average layperson is not familiar with design and function features of traffic control devises," plaintiffs' failure to present expert testimony "to establish the standard of care" for their claim for negligent design of intersection where accident occurred was "fatal to their case") (citation omitted). Likewise, whether a municipality or its agent selected and implemented appropriate traffic control measures—whether it set an appropriate speed limit, for instance, or properly installed a stop sign at an intersection instead of a traffic light—may, at least in some instances, require expert testimony. *See, e.g., District of Columbia v. Freeman*, 477 A.2d 713, 719-20 (D.C. 1984) (holding that expert testimony was required to establish that intersection where fatal accident occurred was not "reasonably safe" and reasoning that a lay juror "does not possess the technical knowledge to judge the city's decision to install a crosswalk, instead of a stop sign, light, or crossing guard, at a particular intersection").

¶36        But whether a public roadway has been maintained in a condition that renders it unsafe for travelers is not a matter beyond the ken of a lay jury, and so a claim for negligent roadway maintenance would not ordinarily require expert testimony. *See Mikell*, 493 S.E.2d at 223-24 (concluding that "plaintiffs were not required to present expert testimony" to support their claim that state negligently maintained roadway where fatal accident occurred by "fail[ing] to keep the bushes cut," which "reduced visibility at the intersection"); *cf. Chernov v. St. Luke's Hosp. Med. Ctr.*, 123 Ariz. 521, 522-23 (1979) (finding that a jury could conclude, from the "faded condition" of the "traffic control signal 'STOP' painted on" a lane in defendant's parking lot, that defendant "negligently failed to properly maintain the traffic control signals which it had placed in the parking lot"). We hold that a lay juror could determine, from common experience, whether Defendants exercised reasonable care to warn the traveling public of the hazard posed by the excavation at Washington Street and 10th Avenue and therefore that Fong's failure to provide expert testimony to establish Defendants' standard of care was not fatal to her claims.

¶37        The court dismissed Fong's claim alleging independent negligence by the City in failing to cover or adequately monitor the excavation after concluding Fong could not establish her claim without "an expert to establish the standard of care." Again, no such expert testimony was required. Photographs show that the excavation was open and neither barricaded nor surrounded by traffic cones. At the time of the accident, it was obscured by the shadow of the backhoe. Fong has presented evidence from which a reasonable jury could conclude that the work crew member responsible for monitoring the hole was talking on his phone and not paying attention when the accident happened. Whether, under these circumstances, the City created an unreasonable hazard by failing to adequately monitor or cover the excavation is not outside the common knowledge of the jury and thus does not require expert support. *See Raup v. Vail Summit Resorts, Inc.*, 233 F. Supp. 3d 934, 941-42 (D. Colo. 2017) (holding that expert testimony was not required to prove skier's claim for injuries allegedly caused by chair lift operators' failure to exercise "reasonable care" in directing skier to disembark from ski lift after seat had passed designated unloading point).

¶38        In dismissing Fong's claim that the City was independently negligent in failing to adequately monitor or cover the excavation, the court also observed that the First Amended Complaint ("FAC") does not expressly set forth this theory of liability. Fong's failure to plead this specific theory of negligence, however, does not entitle Defendants to relief. After

all, Arizona's pleading rules require only that a complaint set forth "a short and plain statement of the claim." Ariz. R. Civ. P. 8(a)(2). The test for determining whether a complaint satisfies "Arizona's notice pleading rules" is "whether enough is stated to entitle the pleader to relief on some theory of law susceptible of proof under the allegations made." *Verduzco v. Am. Valet*, 240 Ariz. 221, 225, ¶ 9 (App. 2016) (citation omitted). Here, Fong satisfied the applicable pleading requirements by alleging in the FAC that the City breached its duty "to render and maintain the area at and near the excavation site in a reasonably safe condition." Although the FAC does not specifically allege that the City neither covered nor adequately monitored the excavation, Fong was not required to plead such "evidentiary details" to state a claim for relief. *See id.* (citation omitted). Summary judgment therefore cannot be sustained on this basis.

¶39 We hold that the superior court erred in granting summary judgment on Fong's negligence claim based on her failure to present expert testimony on the applicable standard of care and breach thereof. Our holding makes it unnecessary to address Fong's alternative argument that the superior court erred by "not allow[ing] [her] an opportunity for her expert to rebut the Defense expert's opinions."

**CONCLUSION**

¶40 For the foregoing reasons, we reverse the grant of summary judgment for Defendants and remand for further proceedings consistent with this opinion.

