*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

**DISTRICT OF COLUMBIA COURT OF APPEALS**

No. 24-CV-0502

LINDA JENKINS, APPELLANT,

V.

RED COATS, INC., APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(2021-CA-003967-B)

(Hon. Yvonne Williams, Trial Judge)

(Submitted May 13, 2025                    Decided July 17, 2025)

*Monique L. Lee* and *Kevin Beins* were on the brief for appellant.

*R. Michael Trumble* was on the brief for appellee.

Before MCLEESE and SHANKER, *Associate Judges*, and WASHINGTON, *Senior Judge*.

WASHINGTON, *Senior Judge*: Appellant Linda Jenkins was injured when she slipped and fell on a wet floor that was being mopped by an employee of appellee Red Coats, Inc. The Superior Court granted summary judgment in favor of Red Coats, determining that, under the circumstances of this case, Ms. Jenkins should have produced expert testimony to establish the standard of care owed to her by Red

Coats. For the following reasons, we vacate the judgment and remand for further proceedings.

## I. Background

Ms. Jenkins was walking out of a building owned by Jemal's Atlantic, LLC and managed by LPC Commercial Services, Inc. while "[a]n employee of the building's janitorial-services provider, Red Coats, was mopping the floor." Ms. Jenkins did not see a wet floor sign "located in the area where the Red Coats employee was mopping," and she slipped on the wet floor and fell, suffering neck, back, and leg injuries.

Ms. Jenkins subsequently sued Jemal's and LPC for negligence, but the trial court determined that she failed to present sufficient evidence to support her claims and granted summary judgment in favor of the defendants. We affirmed that decision. *See Jenkins v. Jemal's Atl., LLC.*, No. 22-CV-867, Mem. Op. & J. at 5 (D.C. Dec. 11, 2023) [hereinafter, "*Jenkins* MOJ"].

Ms. Jenkins also brought two claims against Red Coats: one for negligence and one for negligent hiring, training, retention, and supervision. The trial court dismissed the latter claim, and we affirmed. *See id.* at 2, 5. As to the former claim, the trial court found that Ms. Jenkins failed to provide an expert witness to testify as

to the standard of care owed to her by Red Coats and granted summary judgment in Red Coats's favor. We vacated that decision, concluding that the trial court did not adequately "explain why expert testimony was necessary in the particular circumstances of this case." *Id*. at 4. We remanded to allow the trial court "to consider anew whether expert testimony was or was not required in the particular circumstances of this case and to explain its conclusion on that point." *Id*.

On remand, the trial court reaffirmed its grant of summary judgment for Red Coats.

The court concluded that, because it was "undisputed that . . . Red Coats placed a wet floor sign near the location at which [Ms. Jenkins] fell," any further action that "Red Coats could and should have taken in accordance with the standard of care it owed to [Ms. Jenkins], other than placing a wet floor sign within [Ms. Jenkins's] line of sight, [wa]s beyond the ken of the average lay-person" and, therefore, expert testimony regarding the standard of care was necessary. Because Ms. Jenkins did not provide such expert testimony, the trial court again granted summary judgment for Red Coats.

On appeal, Ms. Jenkins argues that the trial court applied the wrong legal standard for determining whether expert testimony was required to establish the standard of care in this case. Ms. Jenkins also asserts that even if the trial court did

use the proper standard, it abused its discretion by requiring expert testimony in this case. According to Ms. Jenkins, "laypeople know enough about mopping to be familiar with how to act reasonably when [doing so]," or, in other words, "laypeople can determine the standard of care for mopping." Thus, Ms. Jenkins asks us to reverse the trial court's judgment and remand for further proceedings.

Red Coats argues that the trial court applied the correct legal standard and further asserts that the court did not abuse its discretion because "a standard of care expert was needed to testify that [Red Coats's] actions in warning of the dangerous condition [by placing a wet floor sign] did not meet the standard of care." As Red Coats explains:

> the [t]rial [c]ourt did not conclude that [Ms. Jenkins] needed an expert to testify [on] how to mop a floor, that a wet floor is slippery, or that [Red Coats] had notice of a dangerous condition. Rather, the [t]rial [c]ourt concluded that [Ms. Jenkins] needed a standard of care expert to testify regarding what other actions [Red Coats] should have taken, if any, to adequately warn [Ms. Jenkins] of the dangerous condition. The [t]rial [c]ourt, in its discretion, determined that those additional steps or actions that [Red Coats] should have taken, if any, were beyond the ken of the average layperson.

(citation omitted). Thus, Red Coats asks us to affirm entry of summary judgment in its favor.

## II.  Discussion

"We review the trial court's grant of summary judgment de novo." *Lumen Eight Media Grp., LLC v. District of Columbia*, 279 A.3d 866, 874 (D.C. 2022). "The decision whether to admit or require expert testimony on a particular state of facts is confided to the sound discretion of the trial court, and we have described that discretion as broad." *Varner v. District of Columbia*, 891 A.2d 260, 266 (D.C. 2006) (internal quotation marks omitted).

There is no indication that the court misinterpreted *Varner* or applied the wrong legal "standard" in this case.  In the District of Columbia, a plaintiff need not put on expert testimony to establish the applicable standard of care when the "negligent conduct is alleged in a context which is within the realm of common knowledge and everyday experience." *Id.* at 265 (internal quotation marks omitted). By contrast, expert testimony is required "where the subject presented is 'so distinctly related to some science, profession, or occupation as to be beyond the ken of the average layperson.'" *Toy v. District of Columbia*, 549 A.2d 1, 6 (D.C. 1988) (quoting *District of Columbia v. Peters*, 527 A.2d 1269, 1273 (D.C.1987)).  We have previously required expert testimony in negligence cases "which involve issues of safety, security and crime prevention." *Varner*, 891 A.2d at 267.  However, the inquiry does not end there; as we previously stated and as the trial court

acknowledged, ultimately, "whether expert testimony is required to support a negligence claim in a case involving safety depends on the circumstances of the particular case." *Jenkins* MOJ at 4. Indeed, "[w]hile expert testimony is required to establish a duty of care in some negligence cases, there are plenty of other cases where it is not required." *KS Condo, LLC v. Fairfax Vill. Condo. VII*, 302 A.3d 503, 508 (D.C. 2023).

"The duty of a contractor[, such as Red Coats,] to take reasonable safety measures to protect the public from hazards created by its work . . . is a duty imposed by the common law." *Bostic v. Henkels & McCoy, Inc.*, 748 A.2d 421, 424 (D.C. 2000). Thus, Red Coats owed a duty to lawful passersby, like Ms. Jenkins, "to protect them against the hazards created by [mopping]. In this regard, its duty was like that of any owner or occupier of land to exercise reasonable care under all of the circumstances to a person lawfully upon his premises." *Id.* at 425 (internal quotation marks and italics omitted). The only question, then, is whether Red Coats's placement of the wet floor sign—the general presence of which is undisputed—was reasonably calculated to protect passersby from the hazard created by mopping.[1] In other words, the question is whether the warning given was adequate.

---

[1] It is not clear to us why the trial court believed the issue extended to what "further action" Red Coats should have taken *beyond* placing the wet floor sign.

In products liability cases, "[c]ourts generally hold that expert testimony is not required to determine the adequacy of warnings aimed at consumers and end users of medical devices, pharmaceuticals, cleaning products and household goods." *Fong v. City of Phoenix*, 551 P.3d 1187, 1195-96 (Ariz. Ct. App. 2024) (collecting cases). "Unlike manufacturer warnings aimed at prescribing physicians and other professionals with specialized knowledge, product safety warnings directed at lay people need only be reasonably readable and apprise a consumer exercising reasonable care of the existence and seriousness of the danger." *Id.* at 1196 (internal quotation marks and ellipses omitted). Thus, we have said that "there is no question more appropriately left to a common sense lay judgment than that of whether a written warning gets its message across to an average person." *Payne v. Soft Sheen Prods., Inc.*, 486 A.2d 712, 727 (D.C. 1985) (internal quotation marks omitted).

By the same logic, in a typical slip and fall case, lay people serving on a jury often do not require expert assistance to determine if a warning was adequate to apprise passersby of the dangerous condition. Akin to the adequacy of warnings in products liability cases, the key considerations for the jury are (1) the extent of the defendant's undertaking to warn; (2) whether a reasonable person would have seen and understood the warning, *see Cottam v. CVS Pharmacy*, 764 N.E.2d 814, 823 (Mass. 2002); and (3) whether the warning was sufficient to apprise the individual of the specific danger ultimately encountered. *King v. Cornell Univ.*, 973 N.Y.S.2d

534, 539 (N.Y. Sup. Ct. 2013); *see also E. Penn Mfg. Co. v. Pineda*, 578 A.2d 1113, 1122 (D.C. 1990) (finding that an adequate warning must properly advise an individual of the "attendant risks"). In cases that do not involve professional or technical knowledge, these are "commonsense" considerations that involve only "the understanding of an ordinary, reasonably prudent person" and are therefore "properly left to the jury without expert testimony."[2] *Cottam*, 764 N.E.2d at 823. Slip and fall cases will usually fall into this "commonsense" category.

When faced with circumstances nearly identical to this case, courts have found that expert testimony was not required to establish the standard of care. For example, in *Johnson-Howard v. AECOM Special Missions Services, Inc.*, after seeing a man mopping the floor and a wet floor sign next to his bucket, the plaintiff slipped and fell, injuring herself. No. 8:19-CV-00614-JRR, 2023 WL 6216604, at *1 (D. Md.

---

[2] We acknowledge that in other contexts involving more complex professional and technical knowledge, expert testimony may be required for the jury to determine whether a warning was adequate. *See United Fire Grp. v. Staker & Parson Cos.*, 332 P.3d 394, 395-97 (Utah Ct. App. 2014) (finding that expert testimony was required to determine the adequacy of road signs and warning devices because the average juror would not "understand[] the intricacies of temporary traffic control during a major construction project"). *But see Sterba v. Jay*, 816 P.2d 379, 389 (Kan. 1991) (finding that no standard-of-care expert testimony was required because whether highway "warning signs or devices were sufficient to warn an ordinarily observant driver of a construction or maintenance operation being carried out in the curb lane . . . [fell] within the common knowledge and experience of motorists").

Sep. 25, 2023).  The court found that a standard-of-care expert was not required because the alleged negligent conduct, either "a failure to make sure the marble floor was not wet or, if it were, that signs alerted people to the hazard," was "quite simple and within the common knowledge and experience of a lay jury." *Id.* at \*7 (internal quotation marks omitted).  Similarly, in *Hitchcock v. Steak N Shake, Inc.*, the plaintiff slipped and fell in a liquid spill in the defendant's store that the defendant claimed it had earlier cleaned with a dry mop and had placed a wet floor sign over the area of the spill.  No. SA-16-CA-922-XR, 2017 WL 5077901, at \*1, \*8 (W.D. Tex. Nov. 2, 2017).  Before trial, the defendant moved for summary judgment "due to the lack of testimony from a liability expert," but the court denied the motion, finding that "a jury could evaluate whether [the defendant's] efforts to clean the liquid spill were sufficient to make the condition reasonably safe without expert testimony." *Id.* at \*8, \*9 (internal quotation marks omitted).

We agree with the rationale underlying these decisions and conclude that, in the similar context of this case, no expert testimony was required to establish the applicable standard of care.  Red Coats implicitly acknowledged that it is commonly understood that a "wet floor is slippery" and therefore hazardous to passersby.  It follows, then, that by relying on this common knowledge and everyday experience, a jury could fairly evaluate for itself the extent of Red Coats's undertaking to warn, whether a reasonable person would have seen and understood the wet floor sign's

message, and whether the wet floor sign was sufficient to apprise Ms. Jenkins of the danger of slipping and falling. In other words, a lay juror could determine, from their common knowledge and everyday experience, whether Red Coats exercised reasonable care in warning passersby of the hazard caused by the wet floor. Ms. Jenkins's failure to provide expert testimony to establish Red Coats's standard of care was therefore not fatal to her claim and, by holding otherwise, the Superior Court abused its discretion.

### III.   Conclusion

For the foregoing reasons, we vacate the judgment of the Superior Court and remand for trial.

*So ordered.*